GLADNEY, Judge.
This appeal is by Gilbert J. Moore from an adverse judgment condemning him to pay Joe K. Walker $1,250, which sum Walker had alleged was due him under the terms of a real estate brokerage contract. After judgment was rendered in the trial court, Walker died and Mrs. Joe Ann Ferguson Lawton, his universal legatee, by appropriate proceedings taken herein has become substituted as party plaintiff and appellee.
Walker, a licensed real estate broker of Shreveport, Louisiana, on December 5, 1951, entered into a written contract with Moore wherein he was appointed the exclusive agent- of defendant to sell certain property formerly owned by the Red River Lumber Company. The contract was effective to March 10, 1952. The property was listed at a price of $40,000 which could be paid partly in cash and the balance in deferred payments. The following clause appears in the contract:
“In making sale I will furnish abstract brought down to date, and will allow purchaser’s- attorneys twenty days from date of delivery of abstract in which to approve title. Should there be any defects I am to be allowed a reasonable time in which to clear same and make title merchantable. I will deliver --property free of all encumbrances, except the above stated mortgage. When deed has been signed I will affix government stamps on same, and pay you the regular real estate board rate of commission based on five per cent of the first $10,000.00 and 2^ per cent on balance of purchase price.”
*223 On December 29,-1951, Walker obtained an agreement from Edward H. Jackson to purchase said property upon the terms stipulated by Moore. The offer was accepted and Jackson deposited $5,000 with Walker to apply on the purchase price pending investigation of and transfer of title. An abstract was secured and Jackson’s attorney undertook to examine the title. On February 11, 1952, an opinion was given in effect rejecting the title unless numerous requirements were met. One of these requirements involved a lien in favor of the United States for taxes, which Egan, the attorney for Jackson, advised that even if prompt corrective measures should be taken' to meet this requirement clear title to the property could not be secured prior to August 1, 1952. This caused Jackson to withdraw his offer and request the return of his check for $5,000. With the consent of Moore, Walker returned the deposit.
Walker then prepared a letter addressed to himself which he proposed Moore sign, the effect of which would be to extend the agency agreement to August 31, 1952, require Moore to pay $625 to compensate Gilbert Peters for his efforts in securing the offer from Jackson and also require Moore to pay Walker $625 if he should sell the property subject to the terms of the contract. It is shown Peters was an associate of Walker in the transaction and that Walker thought Peters was entitled to one-half of the commission. Moore declined to sign the letter and rejected Walker’s proposal which Walker said was offered in a spirit of compromise. This suit was filed when thereafter Moore refused to pay the full commission.
Appellant’s defense to the action by Walker was clearly set forth in his answer:
“Further answering, defendant shows that the plaintiff represented to him at the time said contract of date December 5, 1951, was entered into that he, plaintiff, would undertake the responsibility of clearing up any defects which might appear in defendant’s title, and that if any sale of said property failed to materialize on ac- . count of any such defects, as-alleged by plaintiff, the responsibility therefor rested with plaintiff alone.
“Further answering,' defendant shows that the contract herein sued upon was prepared and drawn by plaintiff on his personal stationery; that under the express provisions of said contract an actual sale of the property in question was necessary before plaintiff would have been entitled to any commission, assuming that plaintiff was a licensed real estate broker; that said contract specifically provides that defendant was to have a reasonable time within which to meet any defects which might appear in defendant’s title, which right was denied defendant; that, as aforesaid, the responsibility of meeting such defects rested with plaintiff; that said contract should be strictly construed against the plaintiff and his contentions.
“Further answering, defendant shows that it was understood between plaintiff and defendant that no commission would be due plaintiff unless an actual sale of said property was consummated, and said contract in evidence of said understanding expressly provided that ‘When deed has been signed I will affix government .stamps on same, and pay you the regular real estate board rate of commission * * *’. That plaintiff having personally prepared said contract, is bound by this provision of the same.”
Urged most seriously in this court as was done in the lower court is an exception of no cause or right of action based on the last above quoted paragraph of respondent’s answer.
The first question presented by the exception is to determine the meaning of the clause
"When deed has been signed, I will affix governmental stamps and pay you the regular real estate board rate, of commission based on five per cent of the first $10,000.00 and two and one- *224 half percent on balance of purchase price.” (Emphasis supplied.)
Counsel for appellant contend that the words emphasized above imply the brokerage fee would not be earned unless the sale be completed. It is argued by appellee the words have no such significant meaning and must be read in the light of the entire contract to mean that the commission would be due when the broker produced a client ready, willing and able to buy.
Legal rules for the interpretation of doubtful meaning are more difficult to apply than to record. As set out in the LSA-Civil Code, our courts are admonished to give effect to a contract according to the true intent of the parties and that intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. The words of a contract are to be understood in their common and usual significance. LSA-C.C. arts. 1945, 1946.
In connection, with the evidence relating to the interpretation to be givep to the contract .counsel objected to the admission of testimony by Moore that he informed Walker and Peters of- the defective nature o-f the title when the' contract was entered into. Both Walker and Peters denied this was true. Their testimony is corroborated to some extent by the language of the contract which bears Moore’s signature, and the trial judge accepted appellee’s version of the evidence. This accords with our view.
 It is generally recognized that real estate brokerage contracts may stipulate that the broker is employed to find a purchaser for the property offered for sale or they may provide that the broker is employed to effect a sale or to- sell the property. In either case he must accomplish what he undertook to do in his contract of employment. 8 Am.Jur. 1048, Brokers, p. 168. - -
Directing our attention now to the instant contract,-we note that;-Moore obligated himself to furnish an. abstract and be allowed a reasonable time to clear title following the period of twenty days permitted purchaser’s attorneys from date of delivery of abstract in which to approve title. These provisions when construed with the stipulation Moore would pay the real estate commission and affix government stamps when the deed should be signed incline us to the view that Walker’s contract required that he furnish a buyer ready, willing and able to buy and that the agreement did not condition the payment of the commission upon the consummation o-f the sale. The verbiage of the contract did iiot impose upon the broker any duty or obligation after a responsible offer was secured. After that it was entirely up to Moore to complete the transaction. That the title requirements could not be met within a reasonable time cannot alter the fact that Jackson was able and willing to complete, the purchase. He was prevented from doing so because of the condition of the title. The situation was the same as though the title could never be corrected.
One of the points urged by appellant in favor of the exception of no cause and no right of action is that this court should be governed by the decision in the case of Boisscau v. Vallon & Jordana, Inc., 1932, 174 La. 492, 141 So. 38, as holding that realtors are not entitled to a commission unless the sale of property is consummated. Appellee, on the other hand, relies principally upon the ruling in the case of Mathews Bros. v. Bernius, 1930, 169 La. 1069-1070, 126 So. 556, in which case the broker had produced a purchaser acceptable to his principal, and the court held his obligation was fulfilled in spite of the fact that a sale could not be consummated as a consequence of the inability of the principal to convey -a marketable title.
After- the Boisseau case the Supreme Court had occasion to consider Guy L. Deano, Inc., v. Michel, 1938, 191 La. 233, 185 So. 9, 10, which held Michel not liable for the agent’s commission because the sale could not be consummated through no fault of his, inasmuch as he was rendered powerless to carry out .his obligation to transfer the property by the act o-f his wife *225 in recording a declaration of a family home after he had in good faith agreed to sell the property. The case was distinguished from the case of Mathews Bros. v. Bernius on the ground that at the time Bernius listed his property he was not in a position to convey a valid title thereto, whereas when Michel listed his property with the agent he had a perfect title and every reason to believe if a purchaser was found he could effectuate a valid transfer.
In the case of Leaman v. Rauschkolb, La.App., Orleans 1941, 1 So.2d 338, 341, Judge McCaleb took occasion to review the Louisiana jurisprudence on this question and thus summarized his findings:
“We discern, therefore, that it is the view of the Supreme Court that agency contracts of this kind should be interpreted to mean that the vendor hires the real estate agent with the intention of becoming liable for a commission only in the event a sale of the property is consummated; that explicit provisions to the contrary contained in the contract will not be enforced since, to do so would lead to an absurd consequence and that the vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his title, at the time he agreed to sell, was not marketable. If, on the other hand, it appears, as in the DeanO' case, that the vendor had a marketable title to the property at the time he agreed to sell it and subsequently, through no fault of his, it becomes encumbered so that it cannot be transferred, then the real estate agent is not entitled to a commission.”-
In the instant case the facts conclusively show that at the time Moore listed his property with Walker the title was not marketable or could -not be made so within'a reasonable'time.' '
We are of the opinion the exception of no cause or right of action was properly overruled for the reasons above set forth, that the evidence satisfies us that the judgment awarding plaintiff $1,250 is correct and should be affirmed subject to the substitution of Mrs. Joe Ann Ferguson Lawton in lieu of Joe K. Walker, deceased.
It is therefore ordered, adjudged and decreed that plaintiff, Joe Ann Ferguson Lawton, vice Joe K. Walker, deceased, do have and recover judgment against the defendant, Gilbert J. Moo-re, in the full sum of $1,250, with 5% per annum interest thereon from- December 29, 1951, until paid and for all costs of this suit, including costs of the appeal.