188 So.2d 623 (1966)
Miss Bertha H. MORERE
v.
DIXON REAL ESTATE CO., Inc. and Cresco, Inc.
No. 2298.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1966.
*624 Dart & Dart, New Orleans, for plaintiff-appellee.
Marcel J. Meunier, Jr., New Orleans, for Dixon Real Estate Co., Inc., defendant-appellant.
Richard J. Meunier, New Orleans, for Cresco, Inc., defendant-appellant.
Before SAMUEL, CHASEZ and HALL, JJ.
SAMUEL, Judge.
Plaintiff, the owner of certain unimproved immovable property in the Parish of Jefferson, filed this suit seeking: (1) to have declared void an alleged contract to purchase and sell that property; and (2) damages for diminution of the property's value and for annoyance, emotional disturbance, etc, allegedly resulting from tortious acts of the defendants. There are two defendants, Cresco, Inc., the purported purchaser, and Dixon Real Estate Co., Inc., the real estate agency which handled the transactions involved. Both defendants answered, asserting the validity of the contract, and reconvened. In their respective reconventional demands Cresco seeks specific performance, attorney's fees and damages or, alternatively, a return of double the deposit, plus attorney's fees and damages and Dixon seeks a commission, attorney's fees and damages.
There was judgment in the trial court decreeing the purported agreement to purchase and sell did not constitute a valid contract, dismissing plaintiff's claim for damages and dismissing both defendant suits in reconvention. Both defendants have appealed therefrom. Plaintiff has answered the appeals praying that the judgment be amended to award her the damages for which she prayed in her petition.
The only controversy as to facts involves what happened in the office of plaintiff's attorney when plaintiff signed the agreement in question. Present on that occasion were plaintiff, her attorney and a Mr. Burglass, a salesman for Dixon. The trial court accepted the testimony given by plaintiff's attorney, a conclusion which we cannot say was erroneous and with which we agree. The facts, as we understand the finding thereof by the trial court and as found by us, are:
On October 12, 1964 plaintiff entered into a written listing agreement with Dixon by which she appointed the latter her exclusive agent for 30 days to sell the property for $11,000, 20% to be paid in cash and the balance to be paid in 60 monthly installments, for which Dixon was to receive a commission of 10% of the sale price. On or shortly after October 16, 1964 Dixon, through its agent, Burglass, presented to plaintiff a written offer to purchase the property and the matter was discussed in the office of plaintiff's attorney. This was the occasion. *625 when Burglass, plaintiff and plaintiff's attorney were the only persons present. The offer to purchase did not contain the name or signature of the purchaser. The line reserved for that signature was blank and in the lower right corner of the instrument, under the blank lines indicated as being for the purchaser's signature, address and phone number, were the stamped words "Dixon Real Estate Co., Inc. By", the signature of Dixon's president and thereunder the typed words "Individually and/or as agent for others".
Plaintiff's attorney made several changes as he read the agreement and initialed three of the changes. Upon reaching the final lines and upon realizing the document was signed only by Dixon and not by the purchaser, he asked Burglass to give him the identity of the purchaser. Burglass replied he did not know and suggested the attorney obtain that information by calling a Mr. Sutton at the Dixon office. The attorney immediately telephoned Sutton who said he did not know the name of the purchaser but that the name was known to another Dixon employee who would shortly return to the office and that he, Sutton, would call back in an hour and give the attorney the requested information. Wishing to avoid having his client and Burglass remain in the office until the information was received, and only as a matter of convenience, the attorney had plaintiff sign three copies of the agreement with the understanding that he, the attorney, would hold those copies in his files pending ascertainment as to whether the purchaser was suitable. After plaintiff had signed in this manner she and Burglass left together. The three signed copies of the agreement were held by plaintiff's attorney.
The attorney did not hear from Dixon until several weeks later when he was informed by a secretary in Dixon's office that Cresco, Inc. was the purchaser. Upon checking the proper mortgage records he found that Cresco was a local corporation, that one of its officers was a former attorney who had been disbarred, and that another officer was the wife of that attorney. Having had some experience with the disbarred attorney, he recommended that his client not accept the offer. With her consent he drew a wavy line through her signature and hand printed the word "void" thereunder on each of the three copies she had signed. On November 16, 1964 he wrote Dixon informing it that plaintiff did not desire to sell the property because the agent had never submitted a written offer to purchase signed by Cresco and, if such an offer was submitted, it would be rejected on the ground that the purchaser's credit was not acceptable to her.
Thereafter Sutton, Dixon's representative, called on plaintiff's attorney and stated he would like to have a copy of the disputed agreement for Dixon's files. The attorney gave Sutton two of the copies and retained one for his own files. Sutton immediately brought one of the copies to Dixon's attorney who registered the same in the conveyance records of Jefferson Parish. Cresco did not know of the registration, or of the intention to register, until after the alleged agreement had been registered.
That part of the judgment appealed from which holds the purported agreement to purchase and sell did not constitute a valid contract is based on a finding by the trial judge that the parties understood there would be no contract, and plaintiff's signature would not consummate the agreement, unless and until her attorney had been given the name of the purchaser and the purchaser was satisfactory to her. While we agree with the holding and do not disagree with the reason therefor if, in fact, Cresco's credit was unsatisfactory, we prefer to base our holding as to the validity of the agreement on another ground.
On October 15, 1964 Dixon obtained an offer from Cresco to purchase the property *626 on a printed real estate form which appears to be the standard form customarily used by real estate agents in this area. One of the provisions of that offer reads: "Purchaser authorizes agent to execute a like agreement as `agent for client' in his behalf for acceptance of this offer by vendor." Dixon then signed another offer dated October 16, 1964 on the same printed form as the one signed by Cresco. It is the second offer, bearing only the signatures of Dixon and plaintiff, with a wavy line drawn through the latter and the hand printed word "void" appearing thereunder, which is the alleged contract plaintiff seeks to be declared void.
We find the two offers do not conform in three material respects: (1) the one dated October 15, 1964 and signed by Cresco provides for a balance of $8,800 payable $147 per month for 60 months, plus 6% interest with principal and interest payable monthly on the unpaid balance, while the one dated October 16, 1964, which contains plaintiff's voided signature, provides for a balance of $8,800 payable $170.13 per month for 60 months including 6% interest; (2) there are several open lines following the printed words "Property sold as is and subject to the following:" in the October 15 offer signed by Cresco, while on those same lines in the other, the October 16 document, appear these typewritten words: "Unpaid balance cannot be prepaid, but purchaser may sell to third party, with assumption of mortgage."; and (3) the offer dated October 15, 1964 provides the act of sale is to be passed before the purchaser's notary, while the later offer of October 16, 1964 provides the act of sale is to be passed before the seller's notary.
An offer must be accepted as made in order to constitute a contract. LSA-C.C. Art. 1805; Fontenot v. Huguet, 230 La. 483, 89 So.2d 45; Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879; Kuhn v. Stan A. Plauche Real Estate Co., La.App., 178 So.2d 296; Bennett v. Treadaway, La.App., 134 So.2d 668.
In the instant case Dixon was without authority to execute any agreement with the plaintiff except one which conformed in all respects to the offer signed by its principal, Cresco. Even assuming, but not holding, that plaintiff's signature on the October 16, 1964 offer presented to her by Dixon constituted a valid acceptance of that offer, in the material respects we have pointed out such acceptance did not conform with the October 15, 1964 offer made by Cresco and no contract between that corporation and plaintiff resulted therefrom.
As Cresco's reconventional demand is based entirely upon the alleged contract between it and the plaintiff, those portions of the trial court judgment which decreed the purported agreement to purchase and sell did not constitute a valid contract, and which dismissed Cresco's reconventional demand, are correct and will be affirmed.
Dixon's reconventional demand for a commission, attorney's fee and damages is based on the rule, enunciated in such cases as Cox v. Green, La.App., 70 So.2d 724, Walker v. Moore, La.App., 68 So.2d 222 and Clesi v. Thacher, 12 La.App. 55, 125 So. 194, that a real estate agent earns his commission, even if the sale is not consummated, when he procures a purchaser ready, willing and able to buy on the terms prescribed by the principal. Plaintiff argues that Dixon forfeited its right to a commission by breaching its fiduciary duty to make known to its principal all material facts concerning the subject matter of the agency and by acting contrary to the interests of its principal when, upon request, it neglected or deliberately refused to give plaintiff's attorney the name of the purchaser and when it registered the purported contract *627 in the public records, thus placing a cloud on plaintiff's title.
We agree with the established rule upon which Dixon relies. But in the instant case we are of the opinion that Dixon is not entitled to a commission or damages because it has not fulfilled all of the requirements of the rule in that it has not produced an "able" purchaser. This conclusion makes a consideration of plaintiff's argument unnecessary.
The record reveals that Cresco had been in existence only a few years. Its president was a man named Copeland who owned 50% of the corporate stock, the other 50% being owned by the disbarred attorney of whom plaintiff's attorney complained. The corporation's sole purpose was to act as a holding concern for Copeland in the purchase of speculative real estate with Copeland putting up all of the necessary money. Only one such transaction had been completed; a lot had been purchased in the name of the corporation for $6,000 on which a mortgage had been given for approximately $3,500, the credit portion of the sale. The corporation is the owner of that piece of property upon which there remains a current balance of approximately $2,500. It has no credit rating anywhere, owns no other property or assets, has no income of any kind and is dependent entirely on Copeland for such amounts as may be necessary to pay its obligations. Copeland is the only source from which Cresco could obtain either the $2,200 cash or the $8,800 credit portions of the sale price involved in the purchase of plaintiff's property and he was under no legal obligation to furnish any money to the corporation.
What constitutes ability to perform on the part of the proposed purchaser can involve a variety of circumstances. But, as used in the rule we are discussing, the word "able" certainly includes a reference to financial ability not only to make the initial payment required to meet the terms of the seller but also to complete the contract of purchase according to its terms. When he is soley dependent upon third persons who are in no way bound to furnish those funds, a proposed purchaser is not, within the rule, "able" to make the purchase. Landry & Passman Realty, Inc., v. Keen, 170 So.2d 775; McKelvy v. Milford, 37 So.2d 370; Sargent v. Wekenman, Mo.App., 374 S.W.2d 635; De Harpport v. Green, 215 Or. 281, 333 P.2d 900; Murphy v. Brown, 252 Iowa 764, 108 N.W.2d 353; Reynor v. Mackrill, 181 Iowa 210, 164 N.W. 335, 1 A.L.R. 523; Mattingly v. Pennie, 105 Cal. 514 39 P. 200; McGavock v. Woodlief, 20 How. 221, 15 L.Ed. 884; 1 ALR 528-532; 12 Am.Jur.2d § 185.
In the instant case Cresco is not an "able" purchaser; it could not pay the $8,800 credit portion of the sale except through the largess of Copeland, its president. And although the record does show Copeland's individual credit is sufficient to make him an "able" purchaser, Copeland's ability to make payment is immaterial. The corporation, and not Copeland, was the proposed purchaser.
The trial court denied plaintiff's claim for damages on the ground she had failed to prove the same. We agree with that finding. The record contains no proof whatsoever regarding any diminution of the property's value. And the only evidence relative to annoyance and emotional disturbance on the part of plaintiff is contained in her own testimony. As we understand that testimony, she was simply "disturbed" by the entire matter and her disturbance seems to have been no greater than that suffered by almost any litigant in almost any other case.
The judgment appealed from is affirmed.
Affirmed.