BYRNES, Judge.
This appeal arises out of a real estate transaction. The facts of the case are as follows:
In 1981, appellant Mrs. Anita Silvernail, a Louisiana real estate agent, was contacted by Mrs. June Shotwell, a Texas real estate agent who had a client interested in purchasing motel property in New Orleans. The two agents agreed to work together and divide equally any commission which might be earned from their efforts.
When the client, Mr. Charles LaCoste Jr., expressed interest in the Yieux Carre Motor Hotel on Rampart Street and an adjoining vacant lot, Mrs. Silvernail went to the Orleans Parish Assessor’s office to ascertain the owner of the lot. There she met appellee, Mr. Anthony Enna, who worked in the office.
Mr. Enna owned an apartment house in the same square as the property Mrs. Sil-vernail was investigating, and he expressed an interest in selling it. When Mrs. Silver-nail brought this information to Mr. La-Coste’s attention, he expressed an interest which culminated in the execution of a Purchase Agreement for the property. The buyer named in the agreement was not Mr. LaCoste, but Noleasco, an ordinary partnership in commendam whose sole general partner was Noleasco Inc., a corporation of which Mr. LaCoste was president. The act of sale was scheduled to be passed before Francis J. Demarest, Mr. Enna’s attorney. Prior to scheduling the sale, Mr. Demarest requested and received a copy of Noleas-eo’s Articles of Partnership.
At the act of sale, Mr. LaCoste gave Mr. Demarest an uncertified check for $50,-000.00, drawn on a Noleasco account, as payment of the cash portion of the sale. Mr. Demarest then issued three checks drawn on his account; one to Mr. Enna for the cash amount of the purchase price less seller’s closing costs, one to Mrs. Silvernail for her half of the $12,000.00 real estate commission, and one to Mrs. Shotwell for the other half.
Mr. Demarest testified that he instructed Mrs. Silvernail and Mrs. Enna, who represented her husband at the act of sale, not to negotiate these cheeks until his account had been credited with the deposit of No-leaseo’s check. Mrs. Silvernail testified that Demarest only requested that they wait until Noleasco’s check was deposited in his account. She further testified that several days later, Mr. Demarest personally told her it was alright to negotiate the check. Mr. Demarest denied this. The day after the act of sale, Mr. Demarest deposited Noleasco’s check in his account. The check was later dishonored.
*58 In the meantime, Mrs. Silvernail had forwarded Mrs. Shotwell’s check to her. Both real estate commission checks were negotiated and honored by Mr. Demarest’s bank, even though his account did not have a sufficient balance to cover them due to the dishonoring of the Noleasco check. When Mr. Demarest became aware of this situation, he stopped payment on the check to Mr. Enna, which had not yet been negotiated. All parties attempted to contact Mr. LaCoste and have Noleasco’s check made good, but without success. Mr. Demarest then filed suit against Mr. Enna, seeking recovery of the real estate commissions and closing costs which he had paid on Mr. Enna’s behalf at the act of sale.
Just before Mr. Demarest filed suit, Mr. Enna executed and recorded a unilateral affidavit declaring his belief that the sale was “null and voidable ab initio” because Noleasco, the partnership, did not have the legal capacity to enter into an act of sale, and because the consideration for the sale (the NSF Noleasco check) had failed. He later induced Mr. LaCoste to execute a similar affidavit, acknowledging that the partnership lacked legal capacity and that the sale was null and voidable. This document was also subscribed to by Mr. Enna and recorded in the notarial archives of Orleans Parish.
Learning that Mr. Enna had re-offered the property to Mr. LaCoste on slightly different terms, Mr. Demarest obtained an injunction, forbidding the sale of the property and freezing Mr. Enna’s checking account. Mr. Demarest obtained summary judgment against Mr. Enna, who then sued Mrs. Silvernail and Mr. LaCoste to recover the amount of the judgment. In her answer, Mrs. Silvernail alleged that by executing and recording the affidavits of nullity, Mr. Enna had breached the purchase agreement and was therefore liable for the real estate commission.
The trial judge ruled in favor of Mr. Enna, awarding him a total of $33,025.21, with legal interest on $21,025.21 from the date of judicial demand until paid. Included in that judgment were sums intended to compensate Mr. Enna for the real estate commission and closing costs he was forced to repay Mr. Demarest, attorney’s fees incurred in his defense of Mr. Demarest’s suit, attorney’s fees incurred in prosecuting his suit against Mrs. Silvernail and Mr. LaCoste, and a final amount which the court felt was “.... the amount of damage sustained by Mr. Enna as a result of his being forced to borrow funds to repay Mr. Demarest and to pay the attorney’s fees charged by Lanne & Reed [Enna’s attorneys in the present suit].. ”
Mrs. Silvernail has appealed this judgment, urging that under the terms of the purchase agreement she was entitled to her real estate commission and that Mr. Enna was not entitled to attorney’s fees.[1] She further argues that she was not liable for the return of Mrs. Shotwell’s half of the real estate commission and that she is not liable to Mr. Enna for incidental expenses he incurred in borrowing money to pay his attorneys and satisfy Mr. Demarest’s judgment against him. We agree in part, and amend the judgment so that Mrs. Silvernail is liable only for the $6,000.00 commission which she actually received.
Generally, a real estate broker earns a commission even if the sale is not consumated, provided he produces a buyer who is ready willing and able to buy on the terms set forth by the principal Eanes v. McKnight, 262 La. 915, 265 So.2d 220, (1972). However, an “able” buyer must have the financial ability to perform the purchase contract. Morere v. Dixon Real Estate Co., 188 So.2d 623 (La.App. 4th Cir. 1966).
The articles of partnership of No-leasco, the supposed buyer in this case, specifically provided that.
The partnership shall commence when the General Partner and the one Partner- *59 in-Commendam named hereinabove shall have executed this agreement and transferred their capital contributions and this agreement shall have been recorded in the mortgage records of the Parish of Orleans, Louisiana. The partnership shall continue until terminated as provided hereinafter, (emphasis added)
The record reveals that these articles were never recorded. Thus, by the terms of the articles themselves, the partnership never came into being. Moreover, the record also reveals that Noleasco Inc., the alleged general partner, was not organized as required by law, and therefore did not exist as a corporation. Thus, the true buyer in this case was Mr. LaCoste, who represented himself as President of Noleasco Inc., and who purported to act for that non-existent corporation, as well as for the non-existent partnership in commendum.
The record leaves no doubt that Mr. La-Coste was not financially able to meet his obligation as buyer. Not only did the $50,-000.00 check to Mr. Enna bounce, but Mr. LaCoste testified at trial that he was unable to secure a commitment from any bank to cover that downpayment check, much less the remainder of the purchase price. Mr-. LaCoste was not an “able” purchaser as that term has been defined in our law, and consequently a commission was not earned. Morere v. Dixon Real Estate Co., supra. We therefore affirm that part of the judgment which held that the real estate commission must be returned.
However, we do not feel that Mrs. Silvernail is responsible for the return of the entire $12,000.00. The record is clear that the commission was paid in two $6,000.00 checks, one made payable to Mrs. Silvernail and one made payable to June Shotwell. Mrs. Shotwell’s check was given to her by Mrs. Silvernail and negotiated by Mrs. Shotwell several days later. Appellee must recover that portion of the commission from Mrs. Shotwell, the person who received it. Nothing in the Rules of the Louisiana Real Estate Commission or the Louisiana Real Estate License Law indicate that Ms. Silvernail should be responsible for the return of money she never received.
In holding Mrs. Silvernail liable for the entire $12,000.00 commission, the trial judge apparently relied on LAC 11-15:33, which is the section of the Louisiana Real Estate Commission Rules and Regulations governing out of state broker cooperation. Sec. 33.1.1 provides that:
The appraisal or sale of real property shall be handled under the direct supervision of a Louisiana broker who shall take full responsibility for all actions of the nonresident broker.
We do not interpret this provision as imposing financial responsibility on the Louisiana broker for the return of disputed commissions paid directly to the out of state broker.
If Mr. Enna wanted to recover that part of the disputed commission which was paid directly to Mrs. Shotwell, he should have joined her in his suit. We are not persuaded by Mr. Enna’s assertion that he was unaware of Mrs. Shotwell’s involvement in the transaction. The agreement to purchase made it clear that the commission was being divided between two agents. At the act of sale, two checks were issued to pay the commission, one of which was payable to June Shotwell. Mrs. Enna was present at that time, representing her husband. The closing statement submitted by Mrs. Silvernail also specified that half of the commission was being paid to Mrs. Shotwell. Given these circumstances, it was error for the trial judge to hold Mrs. Silvernail liable for the return of the entire $12,000.00 commission, rather than the $6,000.00 she actually received.
It was also error for the trial judge to hold Mrs. Silvernail responsible for Mr. Enna’s attorney’s fees and court costs in his defense of Mr. Demarest’s suit and the prosecution of his suit against Mrs. Silvernail. Attorney’s fees are not recoverable unless they are specifically provided for by statute or contract Simmons v. Hernandez, 287 So.2d 637 (La.App. 3rd Cir.1973) writ denied 290 So.2d 902 (La.1974). We have found no statute which authorizes *60 the payment of attorney’s fees in this situation and have concluded that the purchase agreement does not render Mrs. Silvernail liable for those fees. That contract provided that:
Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all reasonable attorney’s fees and costs incurred by the other party, and/or agent in enforcing their respective rights.
The phrase “either party” clearly contemplates the buyer and seller as being responsible for attorney’s fees, costs and commission in the event of a breach. The agents are not “parties” as that term is used in this portion of the contract. We therefore reverse the award of attorney’s fees.
In support of the lower court’s judgment, Mr. Enna argues that by refusing to return the commission when asked, and by representing Mr. LaCoste as a able purchaser, Mrs. Silvernail breached her fiduciary duty to him and was therefore liable for the damage caused by that breach. We do not agree.
There was a genuine dispute as to whether a commission had been earned in this case. Mrs. Silvernail’s refusal to return the commission was based on her belief that she had earned it. Nothing in the record indicates that Mrs. Silvernail did not act in good faith under unusual circumstances. There was also a dispute concerning how long Mr. Demarest asked the parties to wait before negotiating the commission and downpayment checks. Apparently this was a point of confusion for all parties, since Mrs. Enna attempted to negotiate her check, even though Mr. Demarest had not told her it was alright to do so. Mrs. Enna testified that she did not think she needed Mr. Demarest’s permission before cashing the check and only, remembered being asked to wait a few days before doing so. (Tr. pg. 198). This is consistent with Mrs. Silvernail’s testimony on this issue.
Considering the vague instructions which Mr. Demarest gave concerning when the checks could be negotiated, we cannot say that Mrs. Silvernail acted in bad faith when she negotiated her check or breached any duty she owed to Mr. Enna. Moreover, nothing in the record indicates that Mrs. Silvernail either had or withheld adverse information about Mr. LaCoste, or misrepresented in any way the status (financial or otherwise) of the buyer she had procured.
We find no basis for finding that Mrs. Silvernail breached her fiduciary duty to Mr. Enna and therefore reverse that part of the judgment which awarded damages based on Mrs. Silvernail’s alleged breach of that duty.
Accordingly, the judgment of the trial court is hereby amended to award judgment in favor of Anthony Enna and against Anita Silvernail in the sum of $6,000.00, plus interest from date of judicial demand, together with all costs at the trial level, and so amended is affirmed. In all other respects the judgment is reversed. Appel-lee shall pay all costs of the appeal.
AFFIRMED IN PART, REVERSED IN PART AND AMENDED.

. Mr. LaCoste did not appeal the judgment against him. We therefore confine our analysis to the judgment against Mrs. Silvernail.