**95 So.2d 321**

**Cliff PROBST**

**v.**

**Mr. & Mrs. Anthony DI GIOVANNI and A. L. Dammerau.**

**No. 42003.**

April 1, 1957.

Rehearing Denied May 6, 1957.

McDonald & Buchler, Metairie, Patrick E. Carr, New Orleans, for plaintiff-appellant.

Eugene J. Morel, William J. Daly, Frederic C. Querens, Hyman Mithoff, Guy L. Deano, Jr., New Orleans, for defendants-appellees.

SIMON, Justice.

Cliff Probst, a real estate agent, instituted this suit against the prospective purchaser and the owners of certain real property to collect a commission allegedly earned on the transaction of the offer and acceptance to purchase said property negotiated through said realtor.

On May 15, 1952 A. L. Dammerau and Mr. and Mrs. Anthony DiGiovanni executed a written agreement, the tenor of which is that Dammerau offered to buy and the DiGiovannis agreed to sell the Plaza Motel Court, the said property having been previously listed for sale with Probst. The sale price agreed upon was $65,000, cash, conditioned upon the ability of the prospective purchaser to negotiate a loan of $35,000 within thirty days from date of said contract, at a rate of interest not to exceed six percent per annum, and payable over a period not to exceed ten years. It was provided in said agreement that should the

loan be unobtainable within said thirty-day period the agreement would be null and void.

The contract further provided that ten percent of the purchase price, or the sum of $6,500, be deposited with plaintiff by Dammerau, the initial deposit of $1,500 to be made simultaneously with the execution of the contract, which was done, an additional sum of $1,500 to be made on May 30, 1952, and the balance of $3,500 to be made on June 30, 1952. It provided that the act of sale was to be executed on or before November 15, 1952 before the notary public designated by the one making the loan aforementioned.

The contract further provided that the seller would pay to plaintiff a commission of five percent on the first $10,000 of the purchase price and four percent on the balance, or a total of $2,700; and that either party who failed to comply with the terms of the agreement would be obligated to pay the said commission and all fees and costs incurred in enforcing collection and damages.

Though having paid part of the total deposit stipulated, Dammerau failed to pay the second deposit of $1,500 due on May 30, 1952.

It appears that Dammerau, being unable to secure a loan of $35,000 on the property, on June 2, 1952, which was within the thirty-day period provided to obtain said loan, obtained a commitment from a loan association for the sum of $32,000 at six percent interest per annum, payable over fifteen years.

On June 2, 1952, Dammerau addressed a letter to plaintiff notifying him that the Guaranty Savings & Homestead Association had agreed to make a loan of $32,000, which loan was acceptable to him, Dammerau. In the left-hand corner of said letter there is a written notation dated June 3, 1952: "We agree to extend payments on $6,500.00 deposit as follows: $1,500.00 on 6/15/52, $3,500.00 on 7/31/52." This notation is signed by Dammerau and Mrs. A. DiGiovanni. Manifestly, this notation constitutes an extension of the date for payment of the deposits.

However, Dammerau failed to make any deposit as called for therein.

On June 14, 1952 he notified plaintiff that he did not intend to go through with the sale and requested the return of the initial $1,500 deposit made as aforesaid. Plaintiff relayed this information to the DiGiovannis.

On September 18, 1952, under private signature, Dammerau and Mrs. DiGiovanni, without the knowledge of plaintiff, executed a mutual release of all obligations flowing from the agreement to buy and sell.

The record discloses that the DiGiovannis sold and conveyed the said Plaza Motel

Court by authentic act dated October 21, 1952 to third parties not here involved.

On October 29, 1952 Probst thereupon instituted this suit against the DiGiovannis and Dammerau, in solido, for payment of his commission. By first and second supplemental and amended petitions Probst alleged the liability of Dammerau as a result of his noncompliance with the terms of said contract and against the DiGiovannis for their failure to have consummated the sale in accordance with said agreement.

The DiGiovannis filed an answer and reconventional demand wherein they admitted the listing of their motel with the plaintiff as well as the terms and conditions of the agreement executed on May 15, 1952. They denied liability for plaintiff's commission for alleged failure on their part to consummate the sale. Reconvening against Dammerau and Probst, in solido, they sought recovery of the full deposit called for in the contract, namely $6,500, allegedly forfeited by the purchaser's noncompliance with the terms of the agreement and attorney fees in the sum of $400, together with interest and cost.

Dammerau filed exceptions of no right of action, want of proper verification, improper filing of supplemental and amended petitions, and oyer. The trial court overruled the first three exceptions and, in response to the demand of oyer, ordered the plaintiff to produce and file in the record a certain letter dated June 27, 1952

addressed to plaintiff and signed by Dammerau's attorney. This letter demanded the return of Dammerau's $1,500 deposit and states that due to his failure to have obtained a $35,000 loan that said agreement was null and void and that Dammerau was therefore entitled to be reimbursed the initial deposit of $1,500.

Dammerau also filed an answer and reconventional demand, denying all liability, and in reconvention demanded against Probst and the DiGiovannis the return of the $1,500 deposit.

The district court rendered judgment dismissing plaintiff's demand and the reconventional demand of the DiGiovannis. The trial court sustained the reconventional demand of Dammerau and rendered judgment in his favor against Probst alone for the sum of $1,500 and costs.

Probst has appealed and seeks the reversal of the judgment denying him recovery of his commission.

On this appeal Dammerau reurges his exception of no right of action contending that since there was no genuine meeting of the minds of the parties that no enforceable contract was entered into, and further that the validity of said contract, having been suspended and conditioned upon the attention of a $35,000 loan to be used in the payment of the purchase price and said loan not having been negotiated within the period of time fixed therein, became unenforceable.

Alternatively Dammerau contends under said exception that, if the said $32,000 loan obtained by him shall be considered as being a valid substitute in lieu of the $35,000 loan, the record fails to disclose that said substituted amount was actually approved and accepted by him or his prospective vendors. He urges that any written modifications of the original contract require the written approval and consent of all parties to be effective.

■ Obviously there is no merit to this contention. True, the legal effect of the entire contract was conditioned upon the purchaser obtaining a $35,000 loan. However, this condition was clearly personal to the prospective purchaser, and operated solely in his favor, who upon failing to obtain said loan had the unquestionable right to declare the contract null and void and to demand the return of his $1,500 deposit. He also had the unquestionable right to waive this stipulation or condition flowing in his favor, but not those in favor of the other party. Cuna v. Elton Lumber Co., Limited, 148 La. 1097, 88 So. 493.

■ Thus, we are constrained to hold that when Dammerau obtained a loan of $32,000 and having notified the interested parties to the effect that this loan was acceptable to him, he thereupon alone modified the suspensive condition which operated in his favor, a right which he undoubtedly had, thereby making the contract as thus modified valid and binding on him.

Dammerau's contention that both the DiGiovannis would have to be parties to any written modification of the amount to be borrowed by him as part of the purchase price is equally without merit. The fact that Mrs. DiGiovanni signed the modification is deemed by us to be only incidental in view of the fact that the DiGiovannis had no privity of interest in how much money Dammerau borrowed, from whom he borrowed it, the rate of interest payable thereon, or the terms of its repayment. The essence of the contract and its ultimate end insofar as the DiGiovannis were concerned was the sale of their motel for the sum of $65,000, cash, on or before November 15, 1952.

■ The question whether the DiGiovannis would have a right to declare the contract breached and demand specific performance and damages from Dammerau for failure on his part to make the second deposit on June 30, 1952 as originally agreed is not before us. They did not assert such a right, nor did they demand from Dammerau the full amount of the deposit called for by the contract prior to having been made defendants herein. On the contrary, by the execution of the document of September 18, 1952, wherein they and Dammerau mutually released each other from all obligations flowing from said contract executed between them nec-

essarily estops them, the DiGiovannis, from any claims interposed against their prospective purchaser. The singular fact that Mr. DiGiovanni did not sign this mutual release is of no moment, he having full knowledge of the acts of his wife in connection therewith and giving his full approval thereof. Furthermore, the sale of the property in question on October 21, 1952 to third parties is conclusive as to their right to demand the deposit which they seek in their reconventional demand.

Dammerau, in an effort to evade his obligation flowing under said contract, contends that his signature, though genuine, was attached to the document setting forth the acceptance of the $32,000 loan as a result of misrepresentation on the part of plaintiff. The testimony of Dammerau in that respect is unsupported by other proof and contradicted in all respects by plaintiff, a reputable realtor of this City.

▮ Citations would be burdensome in support of the principle that fraud is never presumed but that it must be alleged and proved by cogent and competent evidence.

▮ The agreement with its terms being valid and binding on Dammerau obligated him to deposit the sum of $1,500 on June 15, 1952. His failure to make the deposit constituted a breach of his obligation.

In the case of Samuelson v. Bosk, 219 La. 477, 53 So.2d 239, this Court held that by the terms of the contract of offer and acceptance to purchase of real property, the failure on the part of the prospective purchasers to make the agreed deposit constituted a breach of their obligation.

In the instant case the contract provides that either party who fails to comply with its terms is obligated to pay the realtor's commission and all fees, cost and damages incurred in enforcing collection. On June 14, 1952 Dammerau notified Probst that he would not "go through" with the purchase of the property and he failed to make a deposit of $1,500 on June 15, 1952, as agreed. Under the terms of his agreement he breached the contract and thereby became liable to Probst for the amount of his commission.

In the case of Kenney v. Wedderin, 220 La. 285, 56 So.2d 550, 552, we find the following expression:

"While it is true, as stated, that the plaintiff's offer to purchase was conditioned upon his ability to secure a loan of $12,500 at a rate of interest not to exceed 5% per annum and for a period of not less than 15 years, and that this was clearly a stipulation in his favor, placed in the contract to insure his ability to finance the purchase, and that such stipulation could be waived by offering cash instead of securing a loan, Weingart v. Delgado, 204 La. 752, 16 So.2d 254—however, the limitation of time to a period of fifteen days from acceptance of the offer was obviously inserted for the protection of the vendor, placing a limita-

tion on the condition in the vendee's favor, upon the expiration of which period the contract terminated."

 We quote with approval the case of Blache v. Goodier, La.App.Orleans, 22 So. 2d 82, 85:

"It is settled that a broker is entitled to his commission as soon as he has obtained a purchaser ready, willing and able to buy at the price agreed upon by the owner, and that the commission is due by the prospective purchaser if, after binding himself, he refuses to comply with his agreement. See Brugier v. Ritchie, 7 La.App. 179; Broomes Printing Office v. Louisiana Margarin Co., 8 La.App. 188; McWilliams v. Stackhouse, 1 La.App. 253; Palmisano v. Stewart, 3 La.App. 66; Dauterive v. West India Transportation Corporation, 3 La. App. 319; Prince v. St. Aurin, 5 La.App. 567; Stoer v. Pearson, 5 La.App. 609.

"In Clesi v. Thacher, 12 La.App. 55, 125 So. 194, 195, we held that where the purchaser has definitely withdrawn and has stated that he would not comply with his offer, there is no necessity that he be put in default and that he is liable at once for the commission of the agent."

Our adjudication of the merits of the asserted rights and obligations as between the litigants as is reflected by this opinion is obviously decisive of and disposes of the merits of the exception of no right of action.

Accordingly, for the reasons assigned, the judgment of the lower court insofar as it dismisses the claim of Cliff Probst and recognizes the claim of A. L. Dammerau is reversed, annulled and set aside; and it is now ordered, adjudged and decreed that there be judgment in favor of Cliff Probst and against A. L. Dammerau in the full sum of $2,700, with interest thereon from date of judicial demand, together with attorney's fee in the sum of $400; all other costs to be paid by A. L. Dammerau. In all other respects the judgment of the trial court is affirmed.