265 So.2d 220

Mrs. Jane Elizabeth EANES

v.

Victor McKNIGHT et al.

Luther S. FORTENBERRY et ux.

v.

Victor McKNIGHT et ux.

No. 51788.

June 29, 1972.

Dissenting Opinion July 6, 1972.

McKinnis, McGehee & Schroeder, E. Drew McKinnis, Baton Rouge, for defendants-applicants.

McCollister, Belcher, McCleary & Fazio, Sidney D. Fazio, Sanders, Miller, Downing & Kean, John Dale Powers, Baton Rouge, for plaintiffs-respondents.

HAMLIN, Justice:

Exercising our supervisory jurisdiction, we directed Certiorari to the Court of Appeal, First Circuit, for review of its judgment in these consolidated cases which affirmed in part, amended in part, reversed in part the judgment of the trial court and remanded the matter to the trial court for further proceedings consistent with the views expressed in the Court of Appeal's decision. Art. VII, Sec. 11, La.Const. of 1921; 251 So.2d 491; 259 La. 894, 253 So. 2d 220.

The Court of Appeal correctly stated that: "On July 27, 1968, Mr. Fortenberry listed for sale with Mrs. Eanes Lot 20, Square 2, Glenmore Place Subdivision, East Baton Rouge Parish. On October 9, 1968, the McKnights signed an agreement to purchase the property for the sum of $49,-000.00,[1] subject to certain terms therein

1. See note 1 on page 919.

I.

"ELIZABETH EANES
"REAL ESTATE BROKER
"AGREEMENT TO PURCHASE

"Baton Rouge, La.   October 9, 1968

"I/We offer and agree to purchase the following property
  "1245 Ingleside Drive
  "Baton Rouge, La.
as per title for the sum of Forty-nine thousand Dollars ($49,000.00) * * *
  "The terms are assumption of the first mortgage balance of approximately $38,000.00 at 6½%, payable $277 per month (including taxes, but not the insurance) and assumption of approximately $11,000.00 on the second mortgage with interest at 6½% payable monthly at a principal payment of $2,000.00 to be paid on or before two years with the $9,000.00 balance to be re-negotiated at that time.
  "* * * *
  "The taxes for current year are to be prorated.  All necessary tax certificates and revenue stamps to be paid by vendor.  Act of sale to be passed before purchaser's notary within one week at the expense of purchaser.  Possession to be given within one week.  This offer is made subject to the acceptance by the owner and I deposit herewith as part of the purchase price the sum of One Thousand Dollars ($1,000.00).
  "This deposit is to be non-interest bearing and is not to be considered as earnest money, the parties hereto reserving the right to demand specific performance.  Mrs. Jane Elizabeth Eanes (or her agents) has acted only as Real Estate Broker to bring the parties together and will in no case be liable to either party for performance or non-formance of any part of this agreement or for any warranty of any nature.  In the event title is not valid and cannot in reasonable time and at reasonable expense be made valid, this contract shall be null and void and the deposit shall be immediately returned.  A policy of title insurance in the amount of the purchase price by a company qualified to do business in the State of Louisiana at owner's expense would, however, satisfy any objection to such title.  *Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay all fees and costs incurred in enforcing collection and damages. Purchaser agrees to pay Broker's commission in the event purchaser fails to perform under this contract.*  [Emphasis ours]
  "This offer remains binding and irrevocable until 6:00 P.M. Thursday Oct. 10, 1968
  "Owner will furnish termite certificate
  "_____, 19_____.  I/We accept the above offer and agree to pay Mrs. Jane Elizabeth Eanes, Real Estate Broker, for professional services rendered the sum of $_____ and to pay a mortgage discount of _____% on the loan amount.
[Sgd.] "Luther Serton Fortenberry _____

  "SELLER (First, Middle and Last Names)
"_____

    "WIFE (First, Maiden and Last Names)
              [Sgd.] "Victor Harold McKnight _____.
                  "PURCHASER (First, Middle and Last Names)

              [Sgd.] "Wanda Sou McKnight _____.
                  "WIFE (First, Maiden and Last Names)"

specified. Simultaneously the McKnights gave a $1,000.00 deposit check to Mrs. Eanes. The agreement stipulates that it remains effective until 6:00 P.M., Thursday, October 10, 1968, and that the act of sale was to be passed before the Purchaser's notary within one week. It was accepted and signed on an undesignated date by Mr. Fortenberry only. Notwithstanding the absence of Mrs. Fortenberry's signature, [Mrs. Fortenberry was judicially separated from Mr. Fortenberry] it is expressly stipulated in the record that the purchase agreement was timely accepted. The closing date was fixed for Friday, October 18, 1968, at the office of purchaser's attorney, M. Aubrey McCleary, Jr. Purchasers commenced occupancy of the home on October 13, 1968. The parties met on October 18, 1968, at the appointed place. [Mrs. Fortenberry appeared and signed the act of sale.] The seller did not produce a termite certificate on this occasion and purchaser declined to buy. The parties met again the following morning at approximately 11:00 A.M., on which occasion purchaser refused to execute a sale on the ground the premises were defective and needed extensive repair. [At this time, the termite certificate was available.] On Sunday, October 20, 1968, the McKnights vacated the residence. Mrs. Eanes returned the McKnights' $1,000.00 deposit check on or about November 1, 1968.

"* * *

"Mr. Harry Rubenstein, neighbor to the Fortenberrys, testified he was familiar with the subject residence, having visited there almost daily for a number of years. He stated the living room floor of the home was very crooked and felt as though it was rotted underneath. Aware of such defects, he purchased the residence in January, 1969, for the sum of $38,000.00 and assumed immediate occupancy. Pursuant to contract with B. L. Dodwell, Rubenstein repaired the living room floor area at a cost of $1,045.00. He did not make any repairs to other areas of the house."

After the above events, February 14, 1969, Luther S. Fortenberry and Joy L. Fortenberry filed suit against Victor H. McKnight and Wanda S. McKnight in which they prayed for recovery of $15,632.80 in damages for alleged losses and attorney's fees allegedly incurred as a result of the McKnights' failure to purchase subject property.

Jane Elizabeth Eanes filed suit, February 3, 1969, against Victor H. McKnight and Wanda S. McKnight in which she sought recovery of her commission allegedly earned in securing the McKnights as purchasers pursuant to the listing agreement with the Fortenberrys; she also prayed for attorney's fees incurred in instituting her action. Alternatively, Mrs. Eanes prayed for judgment against the Fortenberrys pursuant to the listing agreement. Mrs. Eanes' suit and

the Fortenberry's suit were consolidated for trial and appeal.

The McKnights reconvened, alleging that Fortenberry breached the agreement to buy and sell in that he failed to produce a termite certificate within the time limit specified in the agreement. Alternatively, they maintained that the agreement to purchase was mutually rescinded by the return of their deposit check. In the further alternative, the McKnights contended that the defective condition of the subject property justified their refusal to purchase it. The reconventional demand of the McKnights prayed for damages in the sum of $5,000.00 for mental pain and suffering caused Mrs. McKnight by the institution of the present litigation. They third partied Mrs. Eanes and her husband, Buddy Eanes, praying for such judgment against said third party defendants as might be rendered against the McKnights as defendants in the main demands. Alternatively, the McKnights prayed that if the agreement to purchase be found to have not been mutually rescinded, they be awarded judgment in the sum of $1,500.00 for prosecuting an action to rescind the contract to buy and sell.

A pre-trial conference was held before District Judge Melvin Shortess on September 8, 1969, and from it ensued a Pre-Trial Order signed by the three trial attorneys and the trial judge. It recites in part:

"5. ESTABLISHED FACTS:

"a) Luther S. Fortenberry and Joy L. Fortenberry, during the month of August, 1968, [the Court of Appeal found that this event took place on July 27, 1968] listed Lot 20, Square 2, Glenmore Place Subdivision, East Baton Rouge Parish, Louisiana, for sale with Elizabeth Eanes, Realtor;

"b) On October 9, 1968, Victor H. McKnight and Wanda S. McKnight *signed a written offer to purchase the property for the sum of $49,000.00, which offer was accepted*; [Emphasis ours]

"c) Defendants moved into the residence on or about October 15, 1968;

"d) The sale was set for closing in the office of Aubrey McCleary, Jr., Notary Public, on October 18, 1968. The sale was not closed on October 18 and the parties agreed to meet again on October 19, 1968;

"e) Defendants refused to sign the Act of Sale on October 19, 1968, and on October 20, 1968, the defendants moved from the property;

"f) On October 22, 1968, defendants received a letter from John Dale Powers, attorney for plaintiffs, advising them that they were in default;

"g) The property was subsequently sold to Isaac Harry Rubenstein, Jr. on January 24, 1969, for the sum of $38,000.00;

"h) Buddy Eanes, a representative of Elizabeth Eanes, showed the house to the defendants and secured an offer from them.

"6. CONTESTED FACTS:

"a) Whether or not plaintiffs complied with all terms and conditions of the purcase agreement;

"b) Whether or not there was any substantial damage to the property to be purchased, at the time of the inspection, on the date of signing of the purchase agreement, and at the time set for the closing of the proposed sale;

"c) The damages, if any, to which plaintiffs are entitled;

"d) Whether the Fortenberrys knew of damage to the house to be sold;

"e) Whether Buddy Eanes told the McKnights that the buckling of the floor was only due to moisture under the floor;

"f) Whether or not the conversation at the attempted closings amounted to a voluntary rescission of the purchase agreement."

Trial was held, and at that time extensive testimony was adduced. At the conclusion, the trial court found that certain admitted defects in the residence were minor, and that Vendor Fortenberry had timely produced a termite certificate as called for in the agreement supra. The court further found that the purchasers had breached the agreement to buy and sell and were liable in damages.

Judgment of the trial court was in favor of the Fortenberrys and against the McKnights in the sum of $3,334.20 (the correct

amount is $3,234.80—attorney's fees, $2,000.00; mortgage payments incurred between the breach by Purchaser and the subsequent sale to a third party, $832.80; interest payments, $300.00, and deposition costs, $102.00); in favor of the Fortenberrys as defendants in reconvention and against the McKnights, rejecting their reconventional demand; in favor of third party defendants, Jane Elizabeth Eanes and Buddy Eanes, and against third party plaintiffs, McKnights; against the McKnights for all costs. The trial court also rendered judgment in favor of Mrs. Eanes for a broker's commission in the sum of $2,940.00; she was not awarded attorney's fees.

In its reasons for judgment, the trial court stated:

"Plaintiff also seeks the sum of $11,000.00 as damages. This figure is the difference between what defendant agreed to pay for the house and what it sold for several months later. This item of damages has caused the court much concern. It is true that by selling the property for $38,000.00 plaintiff lost $11,000.00 but the court does not feel he is entitled to recover that sum. J–2, the contract between the parties, specifically gave plaintiff the right to sue for specific performance. Had he so done he would not have sustained any loss at all because this court would have enforced his right to specific performance. He elected not to do so and sold his property at a sub-

stantially lower figure than defendant had offered. The court does not feel that he can recover the difference from defendant."

On appeal, the Court of Appeal affirmed the judgment of the trial court awarding Mrs. Eanes a brokerage commission and denying her attorney's fees; it awarded the Fortenberrys $1,234.80 for mortgage payments, interest and depositions with legal interest; it reversed the judgment of the trial court which awarded the Fortenberrys $2,000.00 as attorney's fees, stating that the trial court could reassess the amount of attorney's fees due vendors after completion of the proceedings on remand; relying on certain enumerated articles of the Revised Civil Code, the Court found that the Fortenberrys were entitled to damages sustained by the sale of their property to Rubenstein at a reduced price; it remanded the matter to the trial court for the purpose of determining the difference between the contract price and the market value of the subject property as of October 19, 1968, and the assessment of such sum as additional damages due vendors.

We granted the application of Victor Mc-Knight and Wanda S. McKnight for Certiorari; herein, they assign the following errors to the judgment of the Court of Appeal:

"1. Both the lower court and the Court of Appeal erred in ruling that counsel for McKnight intended to admit that the Mc-Knight offer had been accepted by both co-owners in the light of the judicial admission of one of the co-owners that she did not accept the offer and the purchase agreement itself which conclusively shows that she did not accept.

"2. Even if counsel for McKnight intended to admit that the McKnight offer had been accepted by both co-owners, both the trial court and the Court of Appeal should have treated such admission as revoked for error of fact in view of the absolutely uncontradicted evidence that one of the co-owners did not accept.

"3. Both the trial court and the Court of Appeal erred in failing to consider and in failing to rule on the contention of the McKnights that there was no agreement on method of payment of the purchase price because a $9,000 balance was to be the subject of obligatory renegotiation two years after the date of the sale.

"4. Both the trial court and the Court of Appeal erred in permitting recovery of the real estate commission where the broker secured the acceptance of only one of the co-owners, where the broker prepared the purchase agreement in uncertain terms, and where defects in the condition of the premises caused the sale to fall through.

"5. The Court of Appeal erred in refusing to rule on the exception of no cause of action filed in the Court of Appeal which was based upon the fact that plaintiffs'

petition with attached exhibits negated the existence of a contract.

"6. The Court of Appeal erred in its ruling on quantum."

Counsel for the Fortenberrys and counsel for Mrs. Eanes submit that the decision of the Court of Appeal is correct and should be affirmed.

Initially, we shall determine the correctness vel non of Assignment of Errors No. 5, supra.

In the Court of Appeal, the McKnights filed a peremptory exception in which they averred that, "The petition of Joy L. Fortenberry discloses no cause of action for the reason that Joy L. Fortenberry never accepted the offer of exceptors herein as shown by the purchase agreement attached to her petition."

■■ We find that the Court of Appeal correctly disposed of the exception and adopt its reasons, which follow, as our own: "The peremptory exceptions filed by the McKnights on appeal assert the nullity of the agreement to buy and sell on the ground that Mrs. Fortenberry is not a signatory thereto. In this regard, it appears that the Fortenberrys were judicially separated prior to the date of the agreement, and that subject property belonged to the community of acquets and gains which theretofore existed between them. This would, of course, have required the wife's signature to the agreement since the de-

cree of separation dissolved the marital community. However, we note, as previously stated, that the record contains an express stipulation that the agreement to buy and sell was duly made and accepted. This judicial admission precludes an exception predicated on the alleged irregularity urged on appeal with respect to the agreement to buy and sell." It is also to be noted that although Mrs. Fortenberry did not sign the agreement to buy and sell, she appeared at the notary's office on October 18, 1968 and signed the act of sale. Her testimony conclusively discloses that she was in complete accord with Mr. Fortenberry's actions to sell the subject property.

Next presented for our consideration is the question of whether the McKnights are bound by a pre-trial stipulation.

Article 1551, LSA–C.C.P., provides:

*"Pre-trial conference; order*

"In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:

"(1) The simplification of the issues;

"(2) The necessity or desirability of amendments to the pleadings;

"(3) What material facts and issues exist without substantial controversy, and what material facts and issues are actually and in good faith controverted;

"(4) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

"(5) The limitation of the number of expert witnesses; or

"(6) Such other matters as may aid in the disposition of the action.

"The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

The foreword to the above statute in discussing the advantages of the statute comments: "One is that the bare facts of the entire case are laid before all parties and the court. This affords a means of gauging far more accurately than would otherwise be possible the ultimate outcome of the case in light of the law and the reaction of the court to the factual disclosures. Both advocates are enabled thereby to recommend to their respective clients a far more accurate appraisal of the final outcome. The judge can even dismiss the action if the admitted and established facts show that the plaintiff does not have a cause of action. (See Silvera v. Broadway Department Store, 35 F.Supp. 625 (D.C.Cal.1940); Montgomery's Manual of Federal Jurisdiction and Procedure, 1942, Par. 523, page 345)."

■■■■ We find that the Pre-Trial Order, supra, contains an express stipulation that both Victor H. McKnight and Wanda S. McKnight, October 9, 1968, signed a written offer to purchase the subject property for the sum of $49,000.00, which offer was accepted. We have read the lengthy testimony of record, which was correctly narrated by the Court of Appeal in its opinion, 251 So.2d 491, and find that Mr. McKnight was well aware of the condition of the instant property at the time the purchase agreement was executed; he had visited it several times and was cognizant of a defective floor condition.[2] He was

---

2. The trial court stated: "The court feels that, while there was a defect in the floor, it was not so substantial as to vitiate the consent of the parties. The testimony showed that after Harry Rubenstein purchased the property he had the condition remedied to his complete satisfaction by B. L. Dodwell for $1,045.00. Mr. Dodwell also testified and confirmed that he corrected all the rotten flooring in the living room for that figure.
"  *    *    *

"None of the witnesses called by defendant could give an estimate as to just how much it would cost to repair the floor damage. Plaintiff's testimony on this point must control, therefore, and the court concludes that the defect was not substantial because it was repaired for just over a thousand dollars.

"The court was also satisfied that plaintiff did not hide the condition of the floor from defendants. The defects were obvi-

engaged in architectural work and was not a novice in the observation of construction. We do not find that when the pre-trial facts were stipulated, the McKnights' attorney committed an error of fact. The buy and sell agreement supra speaks for itself. An orderly disposition of each case and of the entire docket and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. Brown v. Hawkins, La.App., 244 So.2d 896. We conclude that the lower courts committed no error in holding that the McKnights were bound by the stipulation made in the Pre-Trial Order.

The McKnights contend that even if they are held to a judicial admission that the offer was accepted, the broker should not be allowed to recover where she failed to show that she had complied with her obligation to the McKnights. They further contend that Mrs. Eanes never showed that she timely communicated with Mrs. Fortenberry or that Luther Fortenberry timely accepted the offer herein involved.

As found supra, a valid and binding agreement to purchase existed between the Fortenberrys and the McKnights. The Agreement to Purchase, supra, provides that "Purchaser agrees to pay Broker's commission in the event purchaser fails to perform under this contract." Supra, we have also found that the McKnights failed to perform under the purchase agreement.

Mrs. Eanes listed the subject property; one of her employees attended to the execution of the purchase agreement; Mrs. Eanes showed the property, concealing nothing; she was present or represented at the act of sale, which was signed by Mrs. Fortenberry on October 18, 1968; as broker, she performed all of the duties incumbent upon her in the instant transaction. She is therefore entitled to her commission. "The broker earns his commission even if the sale is not consummated when he procures a purchaser, ready, willing and able to buy on terms prescribed by the principal. Morere v. Dixon Real Estate Co., Inc., La.App., 188 So.2d 623. Inability of vendor to deliver title because of impediment existing at time of signing of agreement to sell does not relieve vendor of liability to broker in the absence of actual notice of the impediment on the part of the broker. Kuhn v. Stan A. Plauche Real Estate Company, Inc., La.App., 178 So.2d 296, (Reversed on other grounds, 249 La. 85, 185 So.2d 210)." Castellon v. Nations, 230 So.2d 675, 255 La. 817, 233 So.2d 252.

ous and such as to put a reasonably prudent man on notice. The fact that repairs were effected so reasonably makes it

obvious that plaintiff was correct in his feeling that the floor was not seriously defective."

See Probst v. Di Giovanni, 232 La. 811, 95 So.2d 321.

The McKnights argue that an essential element of a contract to sell is lacking in the instant contract; they urge that there is no agreement on payment of the price. They submit in brief: "In the Court of Appeal, the McKnights filed a peremptory exception of no cause of action to the petition of Luther S. Fortenberry urging, among other things, no agreement on method of payment of the purchase price. But, the Court's opinion does not discuss this very serious matter of whether there was a binding agreement on the manner of payment of the price. In substance, the purchase agreement called for assumption of 'the second mortgage' with an $11,000 balance payable $2,000 in two years with the $9,000 balance to be renegotiated at that time. It is clear that no actual mortgage containing such terms ever existed for if there had been one, opponents would have certainly produced it. *How then was the $9,000 to be paid?* In five years? ten years? fifty years? Who was going to say? The purchase agreement purports to guarantee that the balance would 'be renegotiated at that time.' Did the Fortenberrys hold the note so as to have capacity to honor that obligation to renegotiate? If they did, it had been extinguished by confusion, and if they did not, they proposed to deliver something they could not deliver. Either way, there was no definite agree-

ment on method of payment as required by Article 2462 of the Civil Code. It is elementary that parties and not courts make contracts. Here, it would not be possible under the renegotiation language for a court to enforce those provisions. The parties never having agreed, no contract exists."

For the instant contract to have been valid, there had to be a thing sold, a price, and consent. LSA–C.C. Art. 2439. Here, the thing was the subject property—the Fortenberry house into which the McKnights moved before the date set for passing the act of sale. Supra, we have found that there was consent of the parties, namely, the written consent of the McKnights and Mr. Fortenberry and the implied and admitted consent of Mrs. Fortenberry. The price of $49,000.00 was definite and serious, LSA–C.C. Art. 2464; the method and means of payment were accidents of the sale. The method of payment of the mortgage might have been somewhat vague, but the contract set forth that the $49,000.00 included such payment. It follows that no essential element of the instant contract was missing. Cf. Clark Warehouse & Implements Co. v. Jacques and Edmond Weil, 152 La. 707, 94 So. 326.

The McKnights contend that the Court of Appeal erred in its ruling on quantum. They argue in brief:

"Shortly after the sale fell through, Fortenberry obtained a $2,478 estimate for repairing the defective substructure of the house * * *. After receiving this estimate, Fortenberry must have realized that the condition of the house could not justify a $49,000 price tag because on January 24, 1969, he sold the house for $38,000. The lower price no doubt allowed the purchaser a sum sufficient to make the necessary extensive repairs. The judgment of the Court of Appeal apparently will require the purchaser to pay the $11,000 difference between the original price and the price as adjusted by Fortenberry himself for the purpose of taking into account the extensive repairs. The holding of both the trial court and the Court of Appeal to the effect that the McKnights should have known of the existence of the defects cannot be reconciled with the action of the parties, including Mr. Fortenberry himself.

"The Court of Appeal decision further erroneously allows recovery for mortgage payments made by Fortenberry during the three months that elapsed before he resold the house. The payoff on his mortgages was reduced by those payments so that he received the benefits for the full amount of principal which he paid upon the resale. But the Court of Appeal decision requires McKnight to pay the full mortgage payments so that Fortenberry recovers twice for the principal amounts of the subject payments."

(They do not set forth the exact amount of principal payments to which they allegedly are entitled.)

We find that under LSA–C.C. Art. 1926,[3] the Fortenberrys are entitled to damages for the loss suffered by the sale of their home at a reduced price. The Court of Appeal properly remanded this matter for their determination. The evidence substantiates the fact that the awards of $832.80, additional mortgage payments, $300.00 additional interest, and $102.00, deposition costs were for expenses incurred by the Fortenberrys. Had the McKnights fulfilled their contract, the Fortenberrys would not have been assessed for the mortgage payments; an interval of several months elapsed between the Rubenstein sale and October 18, 1968 during which time the Fortenberrys were liable for certain timely payments on the subject property. We find no error in the quantum allowed by the Court of Appeal. Credit for any double payments on the mortgage can be adjusted between the parties on the remand.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is

3. "On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section." LSA–C.C. Art. 1926.

affirmed. All costs of this Court are to be paid by Victor McKnight and Wanda S. McKnight.

BARHAM, J., dissents and will assign reasons.

TATE, J., concurs in result.

DIXON, J., concurs.

BARHAM, Justice (dissenting).

I must dissent from the holding of the majority for I find error in its conclusion that the nullity of the agreement to buy and sell was waived by the McKnights. The defect in that agreement urged by the McKnights was the failure of Mrs. Fortenberry to sign as co-owner since she and her husband were judicially separated and the marital community dissolved. The majority has adopted the conclusion of the Court of Appeal recognizing that while her signature was required, the judicial admission of the McKnights that the agreement to buy and sell was duly made and accepted precludes the raising of this objection. It was also noted that Mrs. Fortenberry did sign the act of sale.

Although the Fortenberrys in brief and in argument before this court pointed out that the act of sale was signed by Mrs. Fortenberry, that document is not in the record and cannot be considered. Further, in giving the factual circumstances involved in this suit the majority recognized that the act of sale was never executed.

The express stipulation which judicially admitted that the agreement to buy and sell was made and accepted, referred to by the Court of Appeal and the majority, is the pre-trial orders. On the assumption that such orders constitute judicial admissions, scrutiny of the entire pre-trial orders reveals no such admission. In the pre-trial order of the Fortenberry-McKnight suit the "Established Facts" state as the first fact that both owners, Mr. and Mrs. Fortenberry, listed the property, and as the second fact that Mr. and Mrs. McKnight signed the offer to purchase, "which offer was accepted". No mention is made of who accepted. Then referring to the heading "Exhibits", there is a notation which reads: "b) a purchase agreement between *Luther S. Fortenberry and the McKnights*". (Emphasis here and elsewhere supplied.) Any inference that can be made from the "Established Facts" listing that both Fortenberrys accepted the agreement to purchase and sell is certainly refuted by the description of exhibits. There was no legal acceptance of the defendants' offer to purchase, and there is no basis for recovery from them for failure to purchase.

In the Eanes-McKnight suit the pre-trial order is even weaker as support for a judicial admission. The "Established Facts" state that "All parties admit the execution of the listing agreement and purchase agreement *according to the terms and conditions set forth therein*". It is apparent

from the face of the agreement to purchase that Mrs. Fortenberry did not sign. The agent never negotiated a legal agreement for sale of the property, and therefore cannot recover her agent's fee.

For these reasons I must respectfully dissent.