378 So.2d 147 (1979)
Willard L. LIPSCOMB
v.
Robert H. CHADBOURNE, Dorothy G. Chadbourne and Latter & Blum, Inc.
LATTER & BLUM, INC.
v.
Robert H. CHADBOURNE and Dorothy G. Chadbourne.
Nos. 12870, 12871.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
David E. Cooley, Jr., Slidell, for plaintiff, appellee.
Mark Alan Jolissaint, Slidell, for defendants, appellants Chadbournes.
Edward J. McCloskey, New Orleans, for defendant, appellee Latter & Blum, Inc.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
The principal issue before us is whether vendors selling for cash are bound under a *148 buy and sell agreement when the purchaser, whose obligation to buy is conditioned upon his ability to secure a certain type loan, verbally agrees to go through with the sale using a different loan arrangement.
This dispute, involving two suits which have been consolidated, arises out of a real estate transaction in which Mr. and Mrs. Robert H. Chadbourne agreed to sell and Willard L. Lipscomb agreed to buy a certain house and lot in St. Tammany Parish. The sale was never consummated. Lipscomb, the prospective purchaser, brought suit against the Chadbournes and the realtor, Latter & Blum, Inc., seeking return of his $2,120 deposit, an equal amount as a penalty, attorney's fees, and expenses incurred in anticipation of the sale. Latter & Blum also sued the Chadbournes for its six percent commission and attorney's fees. In both petitions, the Chadbournes filed reconventional demands.
The trial court ordered Latter & Blum to return Lipscomb's deposit and gave judgment in favor of Lipscomb and against the Chadbournes for a $2,120 penalty award. The Chadbournes were also ordered to pay Latter & Blum a six percent commission. The reconventional demands were dismissed. No attorneys' fees were awarded.
Mr. and Mrs. Chadbourne appeal. Latter & Blum answered the appeal seeking attorney's fees. Lipscomb's answer to the appeal was untimely and will not be considered.
On June 18, 1977, Lipscomb made an offer to purchase the Chadbournes' house and lot for $21,200 in cash. The offer was promptly accepted by the Chadbournes. The buy-sell agreement was entered on a standard printed form and included the following provisions:
This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $14,900 by a mortgage loan or loans at a rate of interest not to exceed 9% per annum, interest and principal payable in equal monthly installments over a period of not less than 20 years. Purchaser obligates self to make good faith application for required loan(s) immediately but in no event later than 10 days of date of acceptance of offer.
Should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from acceptance hereof, this contract shall then be null and void and the agent is hereby authorized to return the purchaser's deposit in full. Commitment by lender to make loan, subject to approval of title, shall constitute obtaining of loan.
. . . . . .
In the event the seller fails to comply with this agreement for any other reason, within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller or the purchaser may demand specific performance, at his option.
. . . . . .
If this offer is accepted, seller agrees to pay the agent's commission of 6 per cent which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.
Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission....
Lipscomb deposited with Latter & Blum $2,120. The contract called for the act of sale to be passed on or before August 19, 1977.
Lipscomb testified that within a few days of the acceptance of his offer he applied for a loan with First Homestead and Savings Association and paid for an appraisal. When he later checked with First Homestead, he discovered a delay in the processing of his application due to difficulties in obtaining a survey. Because he was concerned about getting a loan commitment within the thirty-day period, Lipscomb applied to First Bank, where he was told he could get a ten-year loan only. On July 11, within the thirty-day period, First Bank *149 sent letters to Lipscomb and Latter & Blum informing them the bank had approved Lipscomb's application for a $14,900 loan "provided it appraises for the selling price and we have a valid first mortgage." Lipscomb admitted he never paid First Bank for an appraisal, but explained First Bank had told him it was unnecessary since First Bank would accept the appraisal made by First Homestead. A loan commitment for a twenty-year loan from First Homestead came on July 29, after the expiration of the thirty-day period.
According to both Lipscomb and Caroline Myers, a real estate associate with Latter & Blum, Lipscomb verbally told Latter & Blum before the expiration of the thirty-day period that despite the ten-year term, the First Bank loan was acceptable to him and he wanted to go through with the sale. Lipscomb's acceptance of the First Bank loan commitment as satisfaction of the financing condition in the buy-sell agreement was never put in writing.
Shortly after the expiration of the thirty-day period for securing financing, Mr. Chadbourne told Myers he no longer wanted to sell his property. Myers informed him he was obligated to sell since Lipscomb had obtained a satisfactory loan commitment and wanted to go through with the sale. Subsequently, Lipscomb and his notary set the closing date for August 18, 1977, and notified Mr. and Mrs. Chadbourne. Lipscomb was present at the appointed time and place, with financing from First Homestead, ready to pay the purchase price and take title. The Chadbournes did not appear.
The Chadbournes argue that since Lipscomb was not able within thirty days to secure a loan commitment which met all the specifications set forth in the buy-sell contract, the agreement by its own terms became null and void. We disagree.
It is well settled that a provision conditioning a sale on the purchaser's ability to make a loan is a suspensive condition for the sole benefit of the purchaser, who may unilaterally waive the provision. The seller, whose only concern is getting the purchase price, has no legitimate interest in the source of the money. Probst v. DiGiovanni, 232 La. 811, 95 So.2d 321 (1957); Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927); Lotz v. Hessler, 369 So.2d 265 (La. App. 4th Cir. 1979); Schroeder v. Krushevski, 186 So.2d 640 (La.App. 4th Cir. 1966).
When Lipscomb indicated his intention to accept loan terms other than those specified in the buy-sell agreement, he waived some of the benefits he was entitled to under the agreement. Lipscomb's acceptance of a ten-year loan commitment fully satisfied the suspensive condition. The Chadbournes cannot be heard to complain. As sellers, who under the contract were entitled to receive cash, it was of no concern to them under what terms Lipscomb obtained the money.
The Chadbournes correctly point out agreements to buy and sell real estate and modifications of such agreements must be in writing. DeCristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949); Rutherford v. Impson, 366 So.2d 944 (La.App. 1st Cir. 1978), writ denied, 369 So.2d 140 (1979); Parker Mead, Inc. v. Cutrer, 239 So.2d 729 (La.App. 1st Cir. 1970). But cf. Arceneaux v. Adams, 366 So.2d 1025 (La.App. 1st Cir. 1978). It is the Chadbournes' position that Lipscomb's acceptance of less favorable loan terms was not an effective modification of the contract since it was never put into writing. However, we easily distinguish modifications of the essential elements of a contract to buy and sell real estate which require mutuality of consent expressed in writing from a unilateral modification of a suspensive condition operating only in favor of the party accepting the change. In such an instance notification alone is sufficient to make the contract, as thus modified, valid and binding upon both parties. See Probst, supra.
For the foregoing reasons, we conclude, as did the trial court, that the Chadbournes defaulted when they refused to pass title. Consequently, according to the terms of the agreement, they became obligated to Lipscomb for a penalty equal in amount to the *150 deposit and to Latter & Blum for a six per cent commission.
Additionally, the contract calls for the defaulting party to pay "all reasonable attorney's fees and costs incurred by the other party, and/or agent in enforcing their respective rights." Parties are allowed to contract with respect to attorney's fees; where the language of the agreement is clear and unambiguous, it should not be disregarded. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Charles Carter & Co. v. Charles W. Hogg Co., 355 So.2d 16 (La.App. 1st Cir. 1977); Terry v. Richmond, 314 So.2d 375 (La.App. 4th Cir. 1975). Accordingly, we reverse the trial court and award to Latter & Blum attorney's fees in the amount of $500.00.
For the reasons assigned, the judgment of the lower court is affirmed in part and reversed in part. Costs are to be paid by appellants.
AFFIRMED IN PART and REVERSED IN PART.