640 So.2d 609 (1994)
HIGH PLAINS FUEL CORPORATION, et al.
v.
CARTO INTERNATIONAL TRADING, INC., et al.
LOUISIANA CHEMICAL EQUIPMENT CO., INC.
v.
CARTO INTERNATIONAL TRADING, INC., et al.
No. 93 CA 1275.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
Rehearing Denied August 17, 1994.
*610 Daniel J. McGlynn, Baton Rouge, for appellees, High Plains Fuel Corp., Louisiana Chemical Equipment Corp., and Joe Maas Intern., Inc.
Keith R.J. Comeaux, Michael Lopresto, New Iberia, for appellant, Michael D. Lopresto.
*611 Before CARTER, GONZALES and WHIPPLE, JJ.
GONZALES, Judge.
In this appeal of two consolidated cases, defendant, Michael D. Lopresto, appeals a judgment granting injunctive relief in favor of plaintiffs, High Plains Fuel Corporation, Joe Maas International, Inc., and Louisiana Chemical Equipment Corporation, and against defendants, Carto International Trading, Inc., Carlos R. Toca, Jr., and Michael D. Lopresto.

FACTS AND PROCEDURAL HISTORY
In 1987, Carto International Trading, Inc. (Carto) was the owner of certain immovable property in West Baton Rouge Parish, Louisiana, known as the Smithfield Sugar Mill Plantation. On May 19, 1987, Carto (Carto), through its president, Carlos R. Toca, Jr. (Toca), entered into a contract of employment with Michael D. Lopresto (Lopresto), an attorney, whereby Lopresto was to represent Carto in pursuit of its breach of lease claim against Agrifuels, Inc. d/b/a Smithfield Fuels (Agrifuels), a lessee who had constructed an ethanol plant at the Smithfield Sugar Mill Plantation, and thereafter had defaulted in some manner under the lease. In the employment contract, Carto (1) granted to Lopresto a lien and privilege on any amount or property recovered, to secure Lopresto's fee, (2) agreed to pay Lopresto a contingent fee of 331/3% of any money or property recovered, and (3) granted to Lopresto an undivided 331/3% in any money or property recovered by Carto.[1] This employment contract was recorded in the mortgage and conveyance records of West Baton Rouge Parish on January 14, 1988.
On December 17, 1987, judgment was rendered in favor of Carto and against Agrifuels in an amount of $38,365.12, plus interest on past due monthly rentals, and $8,000.00 in attorney fees. The judgment also decreed Carto to be the owner of the constructions, buildings, improvements, and equipment located at the sugar mill site. This judgment included a property description of the sugar mill site, where the ethanol plant had been constructed, and was recorded in the mortgage and conveyance records of West Baton Rouge Parish sometime after recordation of Lopresto's employment contract.
On March 24, 1992, Carto executed an "Agreement for Sale of Personal and Chattel Property by Auction" with plaintiff, Joe Maas, International, Inc. (Maas), an auctioneer, to sell the equipment inventory of the ethanol plant. The executed contract was sent to Maas by Toca, on behalf of Carto, with a cover letter which stated that the contract was enclosed as well as a check for $10,500.00 to cover advertising fees. The letter also contained a notation that a carbon copy of the correspondence was being sent to Lopresto.
The auction of the ethanol production equipment was held on May 28, 1992. Within twenty four hours after the auction, Lopresto contacted Joe Maas, president of Maas and the person who conducted the auction, told Mr. Maas that he had a 331/3% ownership interest in the equipment that had been sold at the auction, and wanted to know how Maas "was going to deal with it." Although he knew beforehand that the auction was going to be held, this was the first time that Lopresto advised Maas of his ownership interest in the equipment.
Plaintiffs, High Plains Fuel Corporation (High Plains) and Louisiana Chemical Equipment *612 Corporation (Louisiana Chemical), both purchased items at the auction. However, these parties were apparently precluded from obtaining the property they purchased due to the protest raised by Lopresto regarding his ownership interest. On July 7, 1992, High Plains and Maas filed a "Rule for Preliminary and Permanent Injunction or, in the Alternative, for Writ of Sequestration" in the Eighteenth Judicial District Court, Parish of West Baton Rouge, against Carto, Toca, and Lopresto, seeking, among other relief, a temporary restraining order (TRO), enjoining the defendants from preventing High Plains' access to the sugar mill site in order to remove the equipment it had purchased at the auction. On October 7, 1992, a similar suit was filed by Louisiana Chemical against the same defendants and seeking the same relief sought by High Plains and Maas.
After TROs were issued in each of the suits,[2] various motions were filed by the parties, and ultimately, a hearing was held on November 10, 1992.[3] At the hearing, the trial court granted Louisiana Chemical's motion to consolidate its suit with High Plains' suit, denied a motion by plaintiffs to hold the defendants in contempt of court, and denied a motion by defendants to dissolve the TROs. Because plaintiffs had also requested preliminary and permanent injunctions against the defendants, a hearing on the preliminary injunctions was set for January 5, 1993. However, no hearing was held on January 5, 1993, as it was agreed by the parties that the issue of the preliminary injunctions would be submitted on the evidence adduced at the November 10, 1992 hearing. On January 7, 1993, the trial court rendered judgment, granting preliminary and permanent injunctions in favor of plaintiffs in the same form and substance as the TROs previously issued, and dispensing with the continued necessity of security.
Defendants thereafter filed a motion for new trial; although a hearing was set on the motion for new trial, there is no indication in the record that a hearing nor a ruling on the motion was ever made. Lopresto subsequently appealed the judgment granting the preliminary and permanent injunctions, and asserts the following assignments of error:
1. The court erred in granting a preliminary and permanent injunction when there was no hearing thereon.
2. The court erred in not granting the motion to dissolve the temporary restraining order filed by defendants.
3. The court erred in granting the injunction in the following particulars:
a. The court incorrectly classified the property in question as movable, rather than immovable;
b. The court refused to recognize the ownership interest of Lopresto;
c. In the alternative, the court refused to recognize the security interest of Lopresto.
4. The judgment granting the preliminary injunction was contrary to the law of Louisiana in that it did not provide for security.

Lack of Hearing on Preliminary and Permanent Injunctions
In his first assignment of error, Lopresto asserts that the trial court erred in issuing the preliminary and permanent injunctions without first conducting a hearing. With regard to the preliminary injunction, La.C.C.P. art. 3602 provides that "[a] preliminary injunction shall not issue unless notice is given to the adverse party and an opportunity had for a hearing." Although a hearing was set for January 5, 1993, no hearing was actually held prior to the rendition of the January 7, 1993 judgment. However, the record clearly indicates that the parties agreed that the preliminary injunction would be submitted on the evidence adduced at the November 10, 1992 hearing, which dealt, in part, with defendants' motion to dissolve the TROs. The defendants' agreement to this *613 submission is evidenced by paragraph 5 of their motion for new trial which reads as follows:
There was no hearing held on January 5, 1993, as it was the agreement of the parties that the Motion to Dissolve the Preliminary Injunctions would be submitted on the evidence at the November 10, 1992 hearing. As per discussions between counsel after the submission of Reasons for Judgment [on the denial of the motion to dissolve the temporary restraining order], the January 5, 1993 hearing date was deemed superfluous and there was no necessity upon anyone having an appearance at that time. In fact, discussions were had between the office of [counsel for defendants] and [counsel for plaintiff's] office. During said discussions, [counsel for plaintiff's] office, as late as January 4, 1993, indicated that there was no necessity for appearing on said date.
By his own agreement, represented by the above quoted text of the motion for new trial, Lopresto agreed to waive the hearing on the preliminary injunction. A stipulation of this nature has the effect of binding all parties and the court. Harris v. West Carroll Parish School Board, 605 So.2d 610, 613 (La. App.2d Cir.), writ denied, 609 So.2d 255 (La. 1992); Eanes v. McKnight, 251 So.2d 491, 494 (La.App. 1st Cir.1971), affirmed, 262 La. 915, 265 So.2d 220 (1972). Thus, Lopresto is bound by his agreement to waive the hearing on the preliminary injunction and cannot now claim that the trial court erred in granting the preliminary injunction because no hearing was held.
However, with regard to the lack of a hearing on the permanent injunction, Lopresto's argument has merit. A permanent injunction is determined on the merits only after a full trial under ordinary process. Ouachita Parish Police Jury v. American Waste and Pollution Control Company, 606 So.2d 1341, 1346 (La.App.2d Cir.), writ denied, 609 So.2d 234 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993). In contrast, a preliminary injunction is a procedural device interlocutory in nature and designed to preserve the existing status pending a trial of the issues on the merits of the case. Ouachita Parish Police Jury v. American Waste and Pollution Control Company, 606 So.2d at 1346. Although the parties agreed that the preliminary injunction would be decided on the evidence from the TRO hearing, there is no proof in the record of an agreement that this same evidence would be used to decide the permanent injunction issue. In the absence of such an agreement, the trial court erred in issuing the permanent injunction without a hearing. We therefore, reverse the January 7, 1993 judgment of the trial court, insofar as it issued permanent injunctive relief against Lopresto.[4]

MERITS OF LOPRESTO'S OBJECTION TO INJUNCTIVE RELIEF
In assignments of error numbers two and three, Lopresto claims that the trial court erred in denying the motion to dissolve the TROs and in granting the injunctions. Specifically, Lopresto argues that the trial court erred in classifying the ethanol production equipment as movable property, erred in refusing to recognize his ownership interest in the property, and in the alternative, erred in refusing to recognize his security interest in the property.
In an opinion dated December 9, 1992, the trial court set forth its reasons for having denied defendants' motion to dissolve the TROs. These same reasons were relied upon by the trial court in issuing the subsequent injunctions. In the opinion, the trial court concluded that the ethanol production equipment was classified as movable property under pertinent articles of the Civil Code. The court further reasoned that the sale of movable property takes effect as to third parties upon delivery to the transferee (La. C.C. art. 518), and that delivery takes place by bare consent if the thing cannot be transported at the time of sale (La.C.C. art. 2478). Based on these principles, the trial court concluded that a valid sale and constructive *614 delivery of the equipment took place between the plaintiffs and Carto, and as such, Lopresto lost his right to assert his alleged ownership interest in the property once the sales were perfected.
Because we find that a determination of whether the property is movable or immovable is not necessary for resolution of this appeal, we do not decide whether the trial court's characterization of the property as movable is correct.

PUBLIC RECORDS DOCTRINE
Lopresto argues that his ownership interest in the property sold at the auction is protected under the public records doctrine, and that the plaintiffs were charged with constructive knowledge of his interest due to the existence, in the public records of West Baton Rouge Parish, of the employment contract and the December 17, 1987 judgment decreeing Carto to be the owner of the equipment located at the Smithfield Sugar Mill Plantation.
Contracts affecting immovable property must be recorded in order to affect third parties. La.R.S. 9:2721 and 2756. The public records doctrine is essentially a negative doctrine declaring that what is not recorded is not effective except between the parties, and a third party in purchasing, or otherwise dealing with, immovable property is entitled to rely on the absence from the public records of any unrecorded interest in the property. La.R.S. 9:2722; Smith v. State, Department of Public Safety, 620 So.2d 1172, 1186 (La.App. 1st Cir.1992).
In applying the public records doctrine, courts can establish no precise criteria to determine when recorded instruments are sufficient to put third persons on notice. The jurisprudence has consistently held that each case is to be decided in light of its own peculiar facts. Voelkel v. Harrison, 572 So.2d 724, 727 (La.App. 4th Cir.1990), writ denied, 575 So.2d 391 (La.1991); Watterson v. Magee, 498 So.2d 30, 32 (La.App. 1st Cir. 1986). Thus, the question to be decided is whether the language in the employment contract granting Lopresto "an undivided 331/3% in any money or property recovered, claimed, or recognized as belonging to [Carto] as a result of any settlement or judgment" coupled with the December 17, 1987 judgment decreeing Carto to be the owner of the "constructions, buildings, improvements, and equipment located on the premises" of the Smithfield Sugar Mill Plantation, is sufficient to have apprised third parties that Lopresto was a co-owner of the equipment sold at the auction.
We find that the language of the two documents would not lead a reasonable person searching the public records to connect the employment contract with the judgment decreeing Carto the owner of the ethanol production equipment. The employment contract contains the following language regarding Lopresto's representation of Carto:
The Client, CARTO INTERNATIONAL TRADING CO., INC., domiciled in New Iberia, Louisiana employs and retains MICHAEL D. LOPRESTO, Attorney and Counselor at Law, Attorney, as its counsel and Attorney to represent it and handle the settlement of suit, claim, or proceedings, against any and all parties, as follows, to-wit:
THE PROSECUTION OF CLIENT'S CLAIM FOR MONEY AND/OR PROPERTY DUE FROM AGRIFUELS, INC. D/B/A SMITHFIELD FUELS AS A RESULT OF A VIOLATION OF LEASE
with full power to institute any and all proceedings that said Attorney may deem necessary or expedient in representing the interests of Client.
However, the employment contract contains no reference to the suit number of the Agrifuels litigation, nor does it make reference to the Smithfield Sugar Mill Plantation or any of the property located thereon.
Further, the December 17, 1992 judgment decreeing Carto to be the owner of the equipment located at the Smithfield Sugar Mill Plantation makes no reference to any ownership interest of Lopresto. On its face, the judgment indicates that Carto is the sole owner of the equipment.
These documents, read alone, or in combination, do not have sufficient connexity to apprise a third party that Carto's grant to *615 Lopresto by means of the employment contract of "an undivided 331/3% in any ... property... recognized as belonging to [Carto] as a result of any ... judgment" actually is a 331/3% interest in the property decreed to be owned by Carto in the December 17, 1992 judgment.
Therefore, even if Lopresto's argument that the property is immovable is correct, and that he is therefore protected by the public records doctrine, the documents he relies on to establish that plaintiffs had notice of his ownership interest via the public records do not accomplish that purpose. Therefore, plaintiffs cannot be held to have had constructive notice of Lopresto's ownership claim to immovable property.
We find that plaintiffs, High Plains and Louisiana Chemical, are the rightful owners of the property purchased by them at the auction, free of any ownership claim by Lopresto. Lopresto's claim, if any, is against Carto, the co-owner who sold Lopresto's share of the property without first obtaining his consent. La.C.C. art. 805. This observation is supported by a clause found in paragraph 15 of the auction contract which obligated Carto, as the seller of the equipment, to provide merchantable title to all items sold, and to hold Maas harmless against any contrary claims.
Accordingly, we find that the trial court did not err in granting the preliminary injunction.

ISSUANCE OF PRELIMINARY INJUNCTION WITHOUT REQUIREMENT OF SECURITY
In his fourth assignment of error, Lopresto claims that the trial court erred in granting the preliminary injunction without the requirement that the plaintiffs provide security. Under La.C.C.P. art. 3610, a preliminary injunction shall not issue unless the applicant furnishes security, except where security is dispensed with by law. Plaintiffs have not referred to, nor has this court found, any law which would allow for dispensation of security in this case. Thus, the trial court erred in dispensing with the necessity of security.
The jurisprudence provides for optional remedies when a preliminary injunction is issued without security. The judgment issuing the preliminary injunction can be set aside, and the case remanded to the trial court for full treatment of the preliminary injunction and security issues, as in Halmar, Inc. v. Louisiana Department of Transportation and Development, 405 So.2d 1179 (La.App. 1st Cir.1981); or, the matter can be remanded to the trial court merely for the fixing of security, as in Bonomolo v. HMC Management Corporation, 477 So.2d 780 (La.App. 4th Cir.1985). In light of the unusual facts of this case, we believe the following language from Bonomolo serves as the best guide:
In a case such as this, where the plaintiff's right to an injunction seems beyond question, no useful purpose would be served by dissolving the injunction for lack of security. A remand to the district court for the posting of bond would, in our opinion, best serve the interests of justice and efficient judicial administration. The bond fixed on such a remand would protect the interest of HMC as effectively as if it had been posted initially. We see no reason to make the parties go through the mechanics of re-applying for an injunction which clearly should issue, merely to fix the amount of the bond. We therefore remand the case [to] the district court [for] this purpose.
Bonomolo v. HMC Management Corporation, 477 So.2d at 782.
As in Bonomolo, plaintiffs' right to a preliminary injunction seems beyond question, and the fact that the property which is the subject of this litigation has been relocated to Kansas,[5] renders Lopresto's only feasible remedy, in the event he is successful in defeating a permanent injunction, against the bond and not against the property. Thus, a remand to the trial court to fix proper security gives him full protection.
*616 Under La.C.C.P. art. 3610, the security which must be furnished in conjunction with the issuance of a preliminary injunction must be sufficient to indemnify a person wrongfully enjoined "for the payment of costs incurred and damages sustained." Thus, on remand, the trial court is to fix the security in an amount consistent with article 3610 and this opinion.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court, with regard to Lopresto, is amended in part, and is affirmed as amended; and it is reversed in part. The judgment granting the preliminary injunction against Lopresto is amended to provide for the fixing of security, and is remanded to the trial court for the fixing of security. The judgment granting the permanent injunction against Lopresto is reversed, and this matter is remanded to the trial court for further proceedings.
AMENDED IN PART, AND AS AMENDED, AFFIRMED; REVERSED IN PART.
CARTER, J., concurs.
NOTES
[1] The pertinent provisions of the employment contract read as follows:

Client hereby grant[s] to Attorney a special lien and privilege on any amount or property recovered in this matter, whether by judgment or settlement, to secure the fee hereinafter agreed upon. Client further recognizes and acknowledges that special privilege granted by La.R.S. 9:5001 in favor of attorney on all of the money or property recovered as a result of the prosecution of this claim.
....
Client further grants, conveys, sets over and assigns to Attorney an undivided 331/3% interest in and to the subject matter and claim of Client's suit or claim, to secure the fee agreed upon as aforesaid, all pursuant to La.R.S. 37:218. Client further expressly grants, conveys, sets over and assigns to attorney an undivided 331/3% in any money or property recovered, claimed, or recognized as belonging to [C]lient as a result of any settlement or judgment.
[2] The issue of whether a proper showing of irreparable injury was made prior to the issuance of the TROs was not raised below nor in this court. We do not address this issue.
[3] The judgment appealed from herein, granting the preliminary and permanent injunctions, was issued by Judge Sharah H. Mulmore. However, in various earlier proceedings in this case, Judges Thomas W. Tanner, Jack T. Marionneaux, and Samuel T. Rowe were the presiding judges.
[4] Carto and Toca did not appeal or answer the appeal. Therefore, the granting of the permanent injunction against them is a final judgment.
[5] In the trial court's December 9, 1992 opinion, it is stated that the equipment has been dismantled, removed from the sugar mill site, and shipped to Kansas.