STOULIG, Judge.
Plaintiff, Bill Terry, Jr., filed this suit against Robert R. Richmond for specific *377 performance of an agreement whereby defendant agreed to buy real estate located at 250 South Broad Street in the City of New Orleans for $202,000. Plaintiff further sought reasonable attorney fees incurred in resorting to litigation to enforce the contract. In the alternative, plaintiff prayed that his title be decreed valid and merchantable, and free from any and all legal defects.
Defendant pleaded in his answer he refused title because it was not merchantable. Richmond also reconvened for reimbursement of the legal and other related expenses involved in the unsuccessful processing of his loan commitment, together with reasonable attorney fees for the defense of this suit.
The trial court rendered judgment ordering the defendant “ * * * to comply with the agreement to purchase the property located at 250 South Broad Street, and * * * within 30 days to take title to said property, and to pay the sum of Two Hundred Two Thousand Dollars and No/100 ($202,000.00) in cash.” Defendant has appealed.
We reverse. Plaintiff’s failure to tender a merchantable title within the time stipulated nullified the agreement by this express provision contained therein:
“Act of sale at expense of purchaser to be passed before Broker’s Notary, on or prior to July 1, 1972, provided that if bona fide curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of act of sale by forty-five days.”
Plaintiff agreed to sell property located at 250 South Broad Street, New Orleans, Louisiana, on grounds measuring approximately 48 feet by 160 feet or as per title. The physical improvements covered the entire land area of the property.
According to the public records, plaintiff’s title lacks 3 to 8 feet of the width fronting on Palmyra Street. In examining the title, it was discovered that this same property was described as having a 45-foot frontage on Palmyra Street in conveyances passed between 1844, the time the square was subdivided, and 1878. Sales or transfers of the same property occurring between 1892 and 1963 recite a 40-foot frontage on Palmyra. It is only in plaintiff’s acquisition from Helen and James Mahan in 1967 that the public record reflects the measurement of 48.17 feet actual, 40-foot title, fronting on Palmyra. The increased footage is based on a survey of R. L. Schumann, surveyor, dated August 22, 1967, which is made part of the description in plaintiff’s title.
Because of these title discrepancies, defendant’s application for a mortgage loan was rejected.[1] Richmond, through his attorney, declined title because of unmer-chantability. Then plaintiff’s attorney in a letter dated August 8, 1972 (attached to the petition but not introduced in evidence), disputed the challenge to the validity of the recorded title and advised that Mr. Terry would be prepared to transfer said title on August 14, 1972 at 2 p. m. in the office of the writer. It was apparent at this time that tender of title would be a mere formality and the sale would not be passed.
Plaintiff filed suit for specific performance on October 19, 1972. When this matter was tried, although plaintiff had not yet pleaded acquisition of the disputed 8 feet through 30 years’ prescription, it became apparent that he could establish ownership of the entire 48-front footage on Palmyra only if his plea of prescription ac-quirendi causa was upheld. (The plaintiff *378 did not file supplemental pleadings to claim such prescriptive acquisition until 9 months after this matter was tried and submitted.)
In this suit plaintiff’s claim to prescriptive title should not have been considered because he failed to assert his ownership of the disputed 8-foot strip was perfected through acquisitive prescription while the agreement to purchase was still in force and effect.[2] While a vendor may establish prescriptive title in a suit for specific performance,[3] we think he is obligated to advise the prospective buyer of his claim to title by prescription within the time the contract specifies the vendor must tender merchantable title and/or the 45-day extension period provided for curative work in connection therewith. Then if the vendee declines what later proves to be a valid prescriptive title, he may be compelled to fulfill the agreement to purchase.
In this case, plaintiff only tendered the record title, which on the face of the public records is litigious. No one is required to accept a litigious title.[4] Even after plaintiff was advised of defendant’s title opinions pointing out the discrepancies in measurements between his acquisition and the earlier links in his chain of title as to Palmyra Street frontage, he still failed to set forth his claim of acquiring the disputed footage by acquisitive prescription. Instead plaintiff’s attorney disputed the title opinions obtained by defendant and re-tendered the same defective record title which plaintiff offered to convey on the last day the agreement permitted the act of sale to be passed. The contract became null and void by its own terms [5] long before plaintiff asserted merchantability of the disputed footage in its record title through acquisitive prescription. At this point defendant was no longer obligated to accept title.
 We next consider defendant’s re-conventional demand to be reimbursed for (1) attorney fees and costs incurred for title examination by the attorney for the Greater New Orleans Homestead, from which defendant initially sought financing, and (2) reasonable fees for legal representation in defending this suit. Attorney fees are recoverable if the payment is stipulated by contract. The contract in this regard states:
“Either party hereto who fails for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay * * * all reasonable attorney’s fees and costs incurred by the other party * * * in enforcing their respective rights.”
Under this provision defendant could not validly claim the title examination fee and other related costs as expenses incurred to enforce his right under the contract; however, legal fees for defending against plaintiff’s suit for specific performance of the agreement because of plaintiff’s failure to tender a merchantable title within the time specified are recoverable under the quoted paragraph. We are of the opinion *379 that attorney fees of $2,000 are reasonable charges for the services rendered by defendant’s attorney at the pre-trial, trial, and appellate levels of these proceedings.
Accordingly, the judgment appealed from is reversed and it is ordered that there be judgment in favor of defendant, Robert R. Richmond, and against the plaintiff, Bill Terry, Jr., dismissing plaintiff’s suit; and further that there be judgment in favor of the plaintiff in reconvention, Robert R. Richmond, and against the defendant in reconvention, Bill Terry, Jr., in the sum of $2,000, together with legal interest from date of judicial demand. Plaintiff is to pay all costs of this litigation.
Reversed and rendered.

. Greater New Orleans Homestead Association issued to defendant a loan commitment letter dated June 22, 1972 “subject to title-examination approval by attorney.” The loan was never consummated because of tbe determination by the homestead’s attorney that plaintiffs title was not merchantable.

. When the merchantability of plaintiff’s record title was disputed and in lieu thereof, or in addition thereto, he intended to tender a prescriptive title, he was obligated to communicate this fact to the proposed purchaser within the time specified by the contract to convey title and/or the 45-day extension period provided for curative work in connection with title requirements so as to afford the buyer an opportunity to accept or reject the prescriptive title during the existence of the agreement to sell.

. Emmer v. Rector, 175 La. 82, 143 So. 11 (1932).

. Young v. Stevens, 252 La. 69, 209 So.2d 25 (1968).

. Under the circumstances of this case, a title dispute having arisen, the agreement to purchase expired at the conclusion of the 45-day curative work provision computed from July 1, 1972, the date specified for the passage of the act of sale. Thereafter no subsequent unilateral action of the vendor could revive it and again render its terms executory.