WILLIAMS, Judge.
This is an action by plaintiffs-sellers to recover a real estate deposit, attorney's fees and court costs against defendants-purchasers for breach of a buy-sell agreement, and a third-party demand by the real estate broker to recover a commission, attorney’s fees and costs claimed to be due under the contract. Plaintiff, by an amending and supplemental petition, has named the real estate broker as a defendant on the grounds that the real estate deposit is being wrongfully held by them. The property was sold to a third party during the pendency of this litigation, so the remedies are limited to monetary damages.
The trial court awarded forfeiture of the $9,000.00 deposit in favor of plaintiffs-sellers, Carol Lynn Doskey, Miriam Doskey Coniglio and Bonnie Doskey Ezell (Dos-keys), against defendants-purchasers, Peggy and Robert McKinnon (McKinnons), and real estate brokers, Riverbend Realty, Incorporated and Sandra Roberts (River-bend), and denied the Doskeys’ demands for attorney fees and court costs. The court also dismissed the McKinnons’ recon-ventional demand for return of the deposit and denied the third-party demand by Riv-erbend seeking a commission and attorney fees. The judgment against Riverbend was later amended limiting their liability to the amount held by them in escrow.
FACTS
The Doskeys entered into a listing agreement with Riverbend on February 23, 1981, to secure Riverbend’s services in locating a purchaser for seven lots they were seeking to sell. Through Riverbend’s efforts the McKinnons were located and a purchase agreement was executed, eventually leading to a sale of two lots with an option granted for the purchase of the balance of the remaining five lots. A resubdivision of the remaining five lots was necessary before the option was to be exercised and the sale completed.
The parties entered into a new purchase agreement on August 3, 1981, for the purchase by the McKinnons of the five lots. The purchase agreement was stated as an all cash offer, i.e., the offer not conditioned upon the McKinnons’ ability to secure financing, with the sale to take place on or before January 4, 1982. In accordance with the terms of the purchase agreement, the McKinnons placed a $9,000.00 deposit (10% of the purchase price — $4,000.00 cash, $5,000.00 promissory note) in Riverbend’s escrow account. The agreement described the property to be sold as five lots, but no official subdivision had ever been made of the plot. The parties necessarily under *1241 stood that such a resubdivision would have to be completed before the sale could take place. To secure City approval for the resubdivision, the Doskeys were to install water and sewerage connections to the lots, but, for unknown reasons, they delayed initiating the work.
On December 29, 1981, with the January 4, 1982, deadline at hand and the resubdivision incomplete, the Doskeys, by written letter through their attorney, sent notice to the McKinnons stating that the title was unmerchantable and invoked the curative clause in the purchase agreement, which had the effect of extending the act of sale sixty days. During the curative period, the Doskeys submitted an application to the City Planning Commission and following a verification of ownership by the Department of Real Estate and Records, it was discovered that all seven lots had been inadvertently conveyed to the McKinnons in the initial act of sale through an error in the legal description. Since this presented an impediment to the resubdivision, the Doskeys drew up an Act of Correction to rectify the mistake, and although there were repeated attempts by the Doskeys to have the McKinnons sign the correction deed, this was never resolved either because of the McKinnons’ refusal or neglect.
On March 1, 1982, the Doskeys’ attorney relayed a letter to the McKinnons setting March 5, 1982, as the date for the passing of the act of sale. It was stated in the letter that “the sellers will provide you with all necessary documentation to give you a merchantable title,” and further stated the non-appearance of the McKinnons would be deemed a default. The McKin-nons failed to appear at the closing.
OBLIGATION TO PAY DEPOSIT, ATTORNEY’S PEES AND COSTS
The McKinnons argue that the purchase agreement expired by its own terms on January 4, 1982, because the Doskeys, by failing to timely commence the resubdi-vision, breached an implied obligation to perform in good faith. In support of their argument, the McKinnons maintain that the unmerchantability, due to an error in the legal description, was discovered after the curative clause was invoked and the only reason it was necessary for the Dos-keys to resort to the curative clause was because of their initial procrastination. We disagree.
The relevant provisions of the August 3, 1981, purchase agreement delineate the respective rights and obligations of the parties, providing that:
In the event curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of act of sale by sixty days ....
XXXXXXXX
In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, fore-feited, without formality beyond tender of title to the purchaser....
Under the terms of the purchase agreement, the Doskeys bound themselves to tender a merchantable title to the five re-subdivided lots within the time specified in the contract and the McKinnons bound themselves to accept title and pay the purchase price if title was timely delivered. The Doskeys’ fulfillment of their obligation was conditioned upon the resubdivision of the five lots. If, however, there was a flaw in the title, then the Doskeys had the right to invoke the curative clause so that the closing date could be extended to give them the opportunity to correct the unmerchant-ability (which was due to the inadvertent error in the legal description in the preceding act of sale involving the two lots.) The invocation of the curative clause did not change the principal obligation; it only had the effect of extending the time in which the Doskeys must render performance under the contract. Except for the initial delay in commencing the resubdivision (which is irrelevant in determining the Dos-keys’ right to invoke the curative clause), the Doskeys exibited good faith in trying to consummate the real estate transaction. Although the Doskeys may have been *1242 somewhat imprecise in setting out the reason why they invoked the curative clause, the fact remains that the title was unmer-chantable. And under the terms of this purchase agreement, the closing date was extended sixty days.
The McKinnons complain of the extension, but the record reveals repeated attempts on their part to frustrate the sale from ever taking place. What should have been of importance to the McKinnons was merchantability and whether the lots had been resubdivided when they were called upon to accept the tender of title. We do not read the curative clause narrowly ignoring the fact that the Doskeys were using their best efforts to complete the transaction. If time were of the essence in establishing the January 4 closing date, the McKinnons, who are experienced real estate brokers, could have limited the effect of the curative clause by deleting it from the purchase agreement. Alternatively, the McKinnons could have inserted a provision in the purchase agreement requiring the Doskeys to set out in writing the exact nature of the unmerchantability on which they relied as a condition for invoking the curative clause. The Doskeys timely exercised the curative clause and successfully completed the resubdivision during the curative period. Accordingly, in view of the fact that the Doskeys would have been able to tender a merchantable title to the five resubdivided lots within the curative period had the McKinnons appeared at the closing, we find the trial court properly determined that the McKinnons were at fault in breaching. the contract by their failure to pay the purchase price on the March 5 closing date.
While the trial court was correct in finding the McKinnons at fault and properly declared the deposit forfeited, the trial court erroneously awarded forfeiture of the deposit in favor of the Doskeys in assessing damages. The purchase agreement provides the following on the issue of the purchaser’s fault:
In the event the deposit is forfeited, the commissions shall be paid out of this deposit, reserving to the seller the right to proceed against the purchaser for the recovery of the amount of the commission.
For the reason that Riverbend is entitled to the forfeited deposit as a commission (reason to be discussed more fully below), not the Doskeys; the trial court’s decision is amended granting judgment in the amount of the commission in favor of the Doskeys against the McKinnons in solido for the sum of $9,000.00.
The Doskeys also seek to be reimbursed for attorney fees and costs incurred in enforcing their rights under the purchase agreement. With respect to these costs, the purchase agreement provides:
Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all reasonable attorney’s fees and costs incurred by the other party, and/or agent in enforcing their respective rights.
Under this provision the party who is without fault can claim reimbursement for costs of litigation; incidental expenses incurred in the attempted sale are excluded. Terry v. Richmond, 314 So.2d 375 (La.App. 4th Cir.1975). The party at fault can also be held liable for court costs. La.C.C.P. Article 2164; Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App. 4th Cir. 1966). The trial court committed error when it denied the Doskeys’ claims for attorney's fees and costs. We find that the Doskeys are entitled to $4,000.00 as reasonable attorney’s fees and costs for enforcing their rights under the purchase agreement and as costs necessitated by this appeal.
BROKERS’ COMMISSION
The trial court erroneously denied Riverbend’s third-party demand seeking a commission, attorney’s fees and costs on the grounds that the McKinnons failed to obtain financing before the expiration of the curative period. The error in the trial court’s reasoning stems from its failure to *1243 recognize that by the McKinnons’ making an all cash offer, they waived their ability to secure financing as a condition of the sale.[1]
Under the specific language of the purchase agreement cited earlier dealing with the purchaser’s default, it is in the event that the purchaser breaches his contractual obligations that the purchaser’s deposit may be forfeited, and the agent’s commission deducted therefrom. The trial court determined that the McKinnons were at fault. The purchase agreement states that the commission is equal to 10% of the purchase price or $9,000.00 (5% of which is payable to Riverbend and the other 5% to Stan Weber and Associates, Incorporated). We find that Riverbend is entitled to $4,500.00 representing their 5% brokers’ commission. Stan Weber and Associates, Incorporated has not intervened in this action and for this reason, we pretermit the question of their right with respect to the deposit.
The purchase agreement also entitles Riverbend to attorney’s fees and costs incurred in prosecuting its claim to the commission. They have submitted no evidence of their expenditures. In the absence of any evidence to the contrary, we find $1,500.00 as attorney’s fees and costs to be reasonable.
DECREE
For the foregoing reasons, the judgment of the trial court is AFFIRMED and AMENDED granting judgment in favor of Carol Lynn Doskey, Miriam Doskey Coni-glo and Bonnie Doskey Ezell against Robert McKinnon and Peggy McKinnon in sol-ido the sum of $9,000.00. It is further decreed that the trial court’s denial of attorney’s fees and costs is REVERSED and judgment is AMENDED granting the Dos-keys $4,000.00 as attorney’s fees and costs in their favor against the McKinnons. The judgment dismissing the McKinnon’s recon-ventional demand against the Doskeys is AFFIRMED. The judgment dismissing the third-party demand of Riverbend Realty, Incorporated and Sandra Roberts is REVERSED and judgment is AMENDED granting in their favor the $4,500.00 deposit held by them in escrow and $1,500.00 as attorney’s fees and costs.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.
REDMANN, C.J., dissents and assigns reasons.
WARD, J., dissents joining in the reasons assigned by Chief Judge REDMANN.

. The purchase agreement states ”[t]his sale is conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $ — by a mortgage loan or loans at a rate of interest not to exceed — % per annum, interest and principal payable over a period of not less than — years in equal monthly installments on or such other terms that maybe acceptable to purchaser.” Although there is language elsewhere in the standard-form purchase agreement referring to the necessity of a mortgage loan as a prerequisite for the broker’s commission, the above provision clearly reflects that no mortgage was contemplated for the consummation of the purchase agreement.